John L. McMAHON, Jr., et al., Petitioners,

v.

John J. CHRISTMANN et al.,
Respondents.

No. A–5696.

Supreme Court of Texas.

July 10, 1957.

For majority opinion see 303 S.W.2d 341.

James E. Prothro, Wichita Falls, Turpin, Kerr & Smith, and Emil C. Rassman and Irby Dyer, Midland, for petitioner.

Paul New and Crenshaw, Dupree & Milam, Lubbock, for respondent.

GARWOOD, Justice (dissenting).

To the extent that it opposes the distinction now drawn between mineral leases and deeds for purposes of the Duhig rule, I agree with Justice Smith's concurring opinion. He may well be correct also in saying that the theory of the instant decision runs counter to that of Benge v. Scharbauer, 152 Tex. 447, 259 S.W.2d 166, although this does not greatly disturb me. However, and contrary to his opinion, I think the Duhig rule, if not declared inapplicable to leases, would require a judgment for the lessees.

The opinion of the Court, despite its polite disclaimer of "disparagement" of the Duhig opinion, is, to my mind, nothing less than an open condemnation of it even as applied to deeds. And we may be sure that, for all our declared reservations about the rule having become a rule of property in deed cases, we will, on the strength of our present comments on it, be hereafter urged to abandon it altogether, when it suits a particular interest so to contend.

Naturally, where we conclude not to apply a well-known rule to one type of fee conveyance (which an oil lease undoubtedly is, as Justice Smith observes) while continuing to apply it to other types, the law will be just that much more complicated than before, and mistakes will be that much more likely to occur. So the reasons for the difference ought to be rather strong, and I do not so consider the reasons given.

With all respect, I cannot escape concluding from the opinion that in the mind of the Court the real reason for now limiting the Duhig rule is less the purported distinction between deeds and leases than the conviction that the rule is simply bad law, improvidently declared. If the rule is bad law, the instant opinion seems to be the first statement of much consequence that so declares, although we have not infrequently had the Duhig case before us with ample opportunity to have said then what we say now against it. The statement that we disregarded the rule up to a point in Benge v. Scharbauer, supra, is doubtless correct, but, as I read the opinion in that case, such was the effect rather than the intent of our decision. We neither stated nor intimated that the Duhig rule was unsound and therefore should be limited in its application. Now there may be in the books some devastating criticism of the rule which has escaped my attention, but certainly the Court here cites no authoritative condemnation of it beyond the fact that the particular member of the Commission of Appeals (admittedly an excellent judge) who wrote an earlier draft of an opinion in that case did not agree with the final draft required by the Supreme Court. While, of course, one's memory may be faulty, I do not recall that counsel in any of the cases involving the Duhig rule during my approximately ten years on the Court, have made any special attack on the soundness of the rule, and lawyers are not apt to be overly timid in this regard when a dubious decision adversely affects the interests of their clients.

The fact that no prior decision may have directly supported the rule at the time it was written is not necessarily a reason to condemn it, especially when we seem unable to point to any prior decision, or, for that

matter, any subsequent one, necessarily and deliberately at odds with it.

Seemingly the main objection made to it is that in some instance that has yet to occur, a mineral lessee will take everything the lessor actually had, including his reserved royalty, merely because the lessor purported to lease with warranty more than he owned. If that should happen, it will certainly not be the first time in our judicial history that a party to an instrument or his heirs or devisees will have suffered for the words to which he put his signature, although he may have done so with the best of intentions and even on advice of counsel. In such cases we often have a strong suspicion that the party in question did not really understand, still less intend, what he was doing, but if the instrument is not ambiguous, we yet remit him to his usually hopeless remedy of reformation for fraud or mutual mistake. See, for a few examples, R. Lacy, Inc., v. Jarrett, Tex.Civ. App., 214 S.W.2d 692, wr. of er. refused; Richardson v. Hart, 143 Tex. 392, 185 S.W. 2d 563; and the recently decided case of Pich v. Lankford, Tex., 302 S.W.2d 645. The moral or policy distinction between such cases and the Duhig case seems to me rather thin.

The formal reason we give for our distinction between deeds and leases (and thus for our whole decision) is our assumed judicial knowledge that mineral lessees generally prepare the leases themselves and, in the case of fractional interests, prepare them in the form of a conveyance of the entire minerals under the tract in question. What I think we really mean here is less a distinction between deeds and leases than a feeling, born of our knowledge of the practical operations of the oil production business, that a rule which we consider unsound in any case, has more opportunity for mischief as applied to leases than as applied to deeds.

As to the lessee preparing the leases generally, I think this is, in a realistic sense, no longer a consideration of great importance, since anybody can buy a quite up-to-date lease form for a few cents in most any stationery store, if a legal form book isn't accessible, and the so-called "country lawyers", who may advise the average individual lessor about his rights, are quite as well up-to-date as anybody on oil and gas matters. In any event, we seem pointedly to avoid holding here that business practice in the matter of mineral leasing is such as to require that leases be construed generally against the lessee. If the facts of the instant case and some other one can think of are fair examples, it doesn't look like the lessors are in much need of special protection from this Court.

As to the assumed practice of the lessees in the matter of getting leases of fractional interests, I, for one, have no such judicial knowledge as the Court appears to have, and do not know from what authoritative source any such knowledge may come. I, for one, could not say, with any certainty, that out of the probably hundreds of thousands of fractional interest leases that have been executed in Texas over the years, 90 per cent or 10 per cent are written by the lessees in the form on which we say they insist—and usually with success—to the probable detriment of lessors.

This somewhat paternal concern for the mineral lessor, at a time when oil is produced in nearly every county in the state and doubtless looms large in the thinking of every landowner, logically relates as well to *deeds* involving minerals and fractional interests as to leases. If we are to assume that the forceful and enterprising "oil man" hands the finished lease to the relatively ignorant fractional interest landowner and says "Quick! Here's your bonus. Sign there.", should we not also assume that somewhat the same thing happens with many deeds involving fractional mineral interests? No doubt the traffic by "oil men" purchasers in the area of mineral purchases by deed is quite large. Making then this latter assumption—that many thousands of absolute fee purchases are

made by "oil men" for oil purposes—is it necessarily, or even probably, true that the corresponding deeds, unlike leases, are largely drawn by the landowner-grantors, and without any intervention of the "oil-men"-grantees? I should think not. Accordingly just how clear and logical is the Court's distinction between deeds and leases for purposes of the Duhig rule? I submit that it is somewhat artificial and, like most artificial distinctions, will conduce more to trouble than to any benefit for landowners or for the law itself.

For these reasons I dissent from the view of the Court concerning the Duhig case. There is no good reason to complicate the law further in that fashion. What the final proper result of the instant suit should be need not be discussed now by me, since whatever result we reach upon the theory we now follow will necessarily be wrong, in my opinion.

My other concern about the Court's opinion is this: although my state of mind may be due to my own limitations, I must confess to some confusion as to the latter portion, in which, although having previously made clear that the Duhig rule will have nothing to do with mineral leases, we seem to say that, nevertheless, the lessor here has purported to convey and warrant the lessees' title to a $^{10}\!/_{96}$ mineral interest, which is outstanding in third parties, and should therefore lose to the lessees his otherwise reserved $^{5}\!/_{96}$ royalty interest, which he evidently did not mean to lose, and that this conflicting situation is a latent ambiguity entitling the Court to consider parol evidence of the intent of the parties.

If the Duhig rule does not apply to leases, or if, as we also say, we have heretofore refused to extend it, even in deed cases, so as to compensate the grantee out of the grantor's reserved royalty, how can it be that the lessor here stands to lose his reserved royalty? The only thing to make him lose it is the Duhig rule, which we say does not apply. I can see how the lessees

might have an action for breach of warranty but do not see how, except for the Duhig rule, they would automatically become owners of the reserved royalty otherwise belonging to the lessor. Do we mean to say that whenever A purports to lease to B an entire tract, with general warranty, and there develops to be an outstanding title, we have a latent ambiguity? Or is it that such an ambiguity exists only when the fraction of net mineral ownership of the lessor, after deducting the outstanding interest, equals or exceeds the fraction reserved as a royalty, and thus does *not* exist when the net ownership fraction is even a millionth more than the royalty fraction reserved?

So far as latent ambiguities go, I can see no difference between one case and another. Surely not every real estate transaction involving a breach of warranty is one of latent ambiguity; nor does the mere existence of a royalty reservation make it otherwise. I think we may as well say that the reservation of a vendor's lien for part of the purchase price, which was calculated at so much per acre, creates a latent ambiguity, when it develops that all or part of the acreage purportedly conveyed with warranty is actually owned by some third person. In such a situation we do not, I think, invite parol evidence as to what the parties really had in mind, although the warranty and the reservation of the vendor's lien can no more "stand together" than (as we say) the warranty and royalty reservation can stand together in the instant case. To me what the Court appears to be saying is that, "When we apply the lease to the actual facts of ownership, we find that the necessary effect, considering the warranty (and the Duhig case), is to convey to the lessee without any reservation of royalty or with a smaller reservation of royalty than the lease provides; but this in turn conflicts with the express provision reserving a particular royalty to the lessor, so we have an ambiguity which develops on application of an unambiguous instrument to the actual facts." If this reasoning is

not an application of the Duhig rule in order to produce an ambiguity, I simply fail to follow it. If it is such an application of the rule, then we seem to apply the rule while saying it does not exist as to leases.