Leland GILBERTSON, Hanson Oil Corporation and GeoResources, Inc., a corporation, Plaintiffs and Appellants,

v.

Wallace F. CHARLSON, Edith Lenz, Eleanor Mengel and Gordon D. Mengel, individually and as joint tenants, Marie Wilkinson, Alvin E. Officer and Eleanor K. Officer, individually and as joint tenants, Evelyn Perkins, Marlene P. Golay, Marlys P. Weiss, Betty L. Snyder, Beatrice E. Butterfield, Mildred H. Fossum, Lawrence N. Gilbertson, Donald L. Gilbertson, The Texas Company, a corporation, Phillips Petroleum Company, a corporation, Defendants and Appellees.

Civ. No. 9808.

Supreme Court of North Dakota.

Jan. 8, 1981.

Rehearing Denied Jan. 23, 1981.

Bjella Neff Rathert Wahl & Eiken, Williston, for plaintiffs and appellants, appearance by Fred C. Rathert, Williston, argued by Dwight C. Eiken, Williston.

Pearce, Anderson & Durick, Bismarck, for The Texas Co. and Phillips Petroleum Co., defendants and appellees, argued by William P. Pearce, Bismarck.

Appearance by Joseph P. Stevens, Minot, for Wallace F. Charlson, Edith Lenz, Eleanor Mengel, Gordon D. Mengel, Marie Wilkinson, Alvin E. Officer, Eleanor K. Officer, Evelyn Perkins, Beatrice E. Butterfield, Mildred H. Fossum, Lawrence N. Gilbertson, and Donald L. Gilbertson, defendants and appellees.

ERICKSTAD, Chief Justice.

The plaintiffs, Leland Gilbertson et al, appeal from an order entered in the District Court of McKenzie County giving summary judgment to the defendants, Wallace Charlson et al, in Gilbertson's action to quiet title to certain mineral rights. We affirm the order granting summary judgment.

The undisputed facts reveal that the interests in the northeast quarter of section 34, township 153 north, range 95 west, of all parties, come from G. S. Thorlackson, who obtained this property pursuant to a warranty deed issued by the state of North Dakota in 1943. The prior title history is irrelevant to this appeal. The warranty deed from the state reserved "five percentum (5%) of all oil, natural gas and minerals" to the state as required by the statutes then in effect. This warranty deed and reservation was of record. G. S. Thorlackson died intestate and his property passed to his children, Louise Charlson, Pauline Gilbertson, and Paul S. Thorlackson in 1947. Each had an undivided one-third interest in the whole surface and in 95 percent of the minerals (5% reserved to the state). Subsequently, Paul S. Thorlackson and Louise Charlson conveyed their interest in the property by one warranty deed to Pauline Gilbertson in the following language:

"WITNESSETH, That the said parties of the first part, for and in consideration of the sum of One Dollar and other good and sufficient consideration to them in hand paid by said party of the second part, the receipt whereof is hereby acknowledged, do by these presents, GRANT, BARGAIN, SELL and CONVEY unto the said party of the second part, her heirs and assigns, FOREVER, all that tract or parcel of land and real estate lying and being in the County of McKenzie and State of North Dakota, described as follows, to-wit:

# Northeast quarter (NE¼) of Section Thirty-four (34) in Township One Hundred Fifty-three (153) North of Range Ninety-five (95) West of the Fifth Principal Meridian #

Reserving and excepting, however, to the Grantors fifty (50%) Per Centum of all oil, natural gas and minerals which may be found on or underlying said lands, including fifty (50%) percentum of rentals and other income therefrom."[1]

1. We shall use the term "minerals" as an abbreviation for all that was referred to in the reserving and excepting clause of the deed.

The parties agree that the warranty deed passed the entire surface. Subsequent to this warranty deed, there were leases and conveyances of the surface as well as the mineral rights. The plaintiffs, Gilbertson et al., (hereinafter grantees) are those persons who hold the mineral rights under the grant to Pauline Gilbertson. They argue that pursuant to *Kadrmas v. Sauvageau*, 188 N.W.2d 753 (N.D.1971), the grant from Paul S. Thorlackson and Louise Charlson to Pauline Gilbertson impliedly warranted a conveyance of 50 percent of the mineral rights. The grantees contend that this 50 percent, in addition to Pauline Gilbertson's 31⅔ interest (⅓ of 95%) would give her 81⅔ percent of the mineral interest and that pursuant to *Kadrmas* the defendants, Charlson et al., (hereinafter grantors) should be estopped from asserting their title to that portion of the reserved mineral interest which is necessary to give the grantees 81⅔ percent.

The grantors contend that *Kadrmas* is inapplicable in this case as the grantees were co-tenants with the grantors of the property conveyed between them.

The grantees assert that the grant and reservation in this case is similar to that in *Kadrmas, supra*, 188 N.W.2d 753, and that *Kadrmas* requires that title to 81⅔ percent of the mineral rights be quieted in Gilbertson. In *Kadrmas*, we applied the *Duhig* doctrine derived from the case of *Duhig v. Peavy-Moore Lumber Co.*, 135 Tex. 503, 144 S.W.2d 878 (1940), applying the principle of estoppel.[2]

2. "The rule laid down in *Duhig v. Peavy-Moore Lumber Co.* has been applied in at least six states. Yet there is no gain-saying the fact that there has always been an undercurrent of disfavor with it." 1 Williams and Meyers, Oil and Gas Law, § 311 at 578.33 (1978).

In *Duhig*, the grantor owned only one-half of the mineral interest in a parcel of land. Subsequently, he conveyed the land and reserved one-half of the minerals. The Supreme Court of Texas determined that the grant warranted one-half of the mineral interest. The court then applied the doctrine of estoppel to prevent the grantor from asserting title to his reservation of one-half of the minerals in order to allow the grantee to enjoy the one-half mineral interest warranted by the deed.

In *McMahon v. Christman*, 157 Tex. 403, 303 S.W.2d 341 (1957), the Supreme Court of Texas expressly refused to extend the *Duhig* doctrine to leases. The court said:

"We have examined the record on file in this court in the *Duhig* case. The rule announced was a novel one in the fact situation before the court. Its adoption was urged by the defendant in error (respondent) and by able amicus curiae. Its adoption was opposed by the plaintiff in error (petitioner) and by able amicus curiae. It is evident from the face of the court's opinion in the case (144 S.W.2d 879–880) that able judges also differed on the wisdom of the adoption of the rule. None of the parties filing briefs cited any case in which the rule had been approved or applied. In support of its adoption of the rule this court cited the following cases: [Citations omitted.] None of the cases cited support the rule, except by analogy. Each of the cases cited involve an application of the well established rule of estoppel against the assertion by a grantor of an *after-acquired title* in contradiction of his covenant of warranty. In addition to citing the cases above noted the court quoted the opening sentence from 19 Am.Jur. 614, sec. 16, the language of which gives seeming support to the rule adopted, but no case is cited by the writer of the text and an examination of the remainder of the section and of the cases cited in the footnotes shows that the writer was dealing with the effect of the rule as applied to an after-acquired title.

"What has been said with reference to the history of the adoption of the rule of the *Duhig* case is not said in disparagement of the ultimate decision of the court to adopt and apply it. It is said, rather, in justification of our refusal to extend it to and apply it in the construction of oil, gas and mineral leases." 303 S.W.2d at 345.

The court further said:

"The rule is an arbitrary one at best and it should not be applied to work an automatic transfer of rights and interests reserved to a lessor a transfer which would all too often frustrate rather than effectuate the intention of the parties." *Id.* at 346.

"The rule having become an established one in the construction of deeds we have no occasion, in this case or at this late hour, to question its validity when it is so used." *Id.*

In *McMahon v. Christman, supra*, one justice concurred specially, 303 S.W.2d at 348, and another justice dissented, 157 Tex. 403, 304 S.W.2d 267 (1957). The dissent believed *Duhig* was applicable. The dissenter said:

"The opinion of the Court, despite its polite disclaimer of 'disparagement' of the *Duhig* opinion, is, to my mind, *nothing less than an open condemnation of it even as applied to deeds.*" [Emphasis added.] 304 S.W.2d at 267.

In *Kadrmas,* the Sauvageaus executed a contract to purchase property from the state. The contract reserved 50 percent of the minerals to the state as required by the statutes then in effect. Subsequently, the Sauvageaus entered into a contract with the Kadrmases to convey the land to them. This contract reserved 50 percent of the minerals to the Sauvageaus. Prior to receiving a quit claim deed from the state, the Sauvageaus executed and delivered a warranty deed to the Kadrmases. We said in that case that the warranty deed to the Kadrmases from the Sauvageaus "[o]n its face ... purports to grant the surface and one-half of the minerals to the Kadrmases, and to except and reserve one-half of the minerals to the Sauvageaus." 188 N.W.2d at 755.

There was no assertion that "the Kadrmases had knowledge, either direct or constructive, of the state's ownership in the minerals, or that the Sauvageaus did not own all of the minerals." *Id.* We held that the Sauvageaus were estopped from asserting their reservation to defeat the Kadrmases' claim of ownership of one-half of the mineral interest as the Sauvageaus' warranty deed purported to convey one-half of the mineral interest and the Kadrmases had no knowledge, either direct or constructive, that they were not receiving that one-half.

In other cases, we have held that persons having interests in real estate may be estopped by their actions from asserting their titles. *Cranston v. Winters,* 238 N.W.2d 647, 652 (N.D.1976). When determining whether or not a party should be estopped, this court has consistently returned to the rule first set out in *Gjerstadengen v. Hartzell,* 9 N.D. 268, 83 N.W. 230, 232 (1900):

"The rule as to the requisites of an estoppel in pais as applied to the title to realty which appeals to us as the most equitable to all parties is that announced by Field, J., in *Boggs v. Mining Co.,* 14 Cal. [279], on page 367. He said: 'It is undoubtedly true that a party may in many instances be concluded by his declarations or conduct, which have influenced the conduct of another to his injury. The party is said in such cases to be estopped from denying the truth of his admissions. But to the application of this principle with respect to the title of property it must appear: First, that the party making the admission by his declaration or conduct was apprised of the true state of his own title; second, that he made the admission with the express intention to deceive, or with such careless and culpable negligence as to amount to constructive fraud; third, that the other party was not only destitute of all knowledge of the true state of the title, but of the means of acquiring such knowledge; and, fourth, that he relied directly upon such admission, and will be injured by allowing its truth to be disproved. * * * There must be some degree of turpitude in the conduct of a party before a court of equity will estop him from the assertion of his title; the effect of the estoppel being to forfeit his property, and transfer its enjoyment to another.'" 83 N.W. at 232.

*See also Sittner v. Mistelski,* 140 N.W.2d 360 (N.D.1966); *Cranston v. Winters,* 238 N.W.2d 647 (N.D.1976); *Farmers Cooperative Ass'n of Churchs Ferry v. Cole,* 239 N.W.2d 808 (N.D.1976).

■ In *Kadrmas,* no claim was made that the Kadrmases had either direct or constructive knowledge that the grantors owned less than 100 percent of the mineral interest, and, therefore, the Sauvageaus were properly estopped from asserting their

---

We in North Dakota are not constrained by extensive prior caselaw as was the Supreme Court of Texas in *McMahon* to apply the *Duhig* doctrine to cases in which the grantee has actual or constructive notice of the state of title in the grantor. *See McElmurray v. McElmurray,* 270 S.W.2d 880 (Tex.Civ.App.1954). In *McElmurray* the grantor and grantee were co-owners of surface and minerals. The grantor deeded the surface and reserved one-half of the minerals. The court held the deed to unambiguously reserve one-half of the minerals to the grantor. The court did not mention *Duhig.* *See also, Gibson v. Turner,* 156 Tex. 289, 294 S.W.2d 781 (1956) (lease between co-owners).

In *Coyne v. Butler,* 396 S.W.2d 474 (Tex.Civ. App.1965) the court determined that in a grant between co-owners the language used by the grantor was an exception and not a reservation.

title to one-half of the minerals.[3] Thus, *Kadrmas* is distinguishable because in this case Pauline Gilbertson had actual notice of the outstanding 31⅔ percent interest as she was the owner of that interest.[4] She also had at least constructive notice of the state's reservation of five percent of the mineral interest as that reservation was of record. One of the requirements for estoppel as announced in *Gjerstadengen v. Hartzell, supra*, 83 N.W. at 232, was that the party seeking estoppel not only lack actual knowledge regarding the true state of title, but be destitute of means of acquiring such knowledge. A public record is such a means. *Sittner v. Mistelski*, 140 N.W.2d 360, 368 (N.D.1966).

In so construing *Kadrmas*, should it be said that we are varying the *Duhig* doctrine referred to and relied on in *Kadrmas*, we, to that extent, reject the *Duhig* doctrine.

■ Section 47–09–13, N.D.C.C., requires that reservations be interpreted in favor of the grantor. Accordingly, we hold that in reserving 50 percent of the minerals, the grantors, under the circumstances of this case, between them retained 50 percent of the minerals. As there were no issues of material fact, the summary judgment was properly ordered by the trial court.

Because of the actual notice of the existence of the 31⅔ percent interest in the minerals to the grantees, the constructive notice of the five percent reservation of the minerals in the state, and the 50 percent reservation of the minerals in the deed by which the grantees received the surface, the grantees were clearly made aware that the grantors were not warranting title to 50 percent of the minerals plus the five percent of the minerals reserved by the state and the 31⅔ percent of the minerals then owned by the grantees. Under these circumstances, there can be no implied warranty that the grantors are warranting what they have reserved. *But see Body v. McDonald*, 79 Wyo. 371, 334 P.2d 513 (1959).[5]

The summary judgment is affirmed.

VANDE WALLE, PEDERSON, PAULSON and SAND, JJ., concur.

---

**3.** As the facts in *Kadrmas* state that no claim of knowledge was made, it was not necessary to address whether or not mere notice that the state was in the chain of title would give constructive notice of the state's reservation required by Section 38–09–01 of the North Dakota Century Code if it was not otherwise recorded. The facts of the present case do not require us to address this issue either, as the state's reservation was of record.

**4.** *See Benge v. Scharbauer*, 152 Tex. 447, 259 S.W.2d 166 (1953). In *Dixon v. Abrams*, 145 Colo. 86, 357 P.2d 917, 918 (1961), notice, among other things, was held to be a factor in holding that a grantee received only 80 percent of the mineral interest when a prior grantor, who owned only 90 percent of the mineral interest, reserved an additional 10 percent.

**5.** Notice is irrelevant as the grantor may warrant title even when he does not own what he is warranting. *Body v. McDonald*, supra. In *Body*, the grantors held only three-fourths of the mineral interest. They transferred the property by warranty deed and reserved a one-fourth interest in the minerals. The court held that the grantors were estopped from claiming that the grantees received less than three-fourths of the mineral interest even when the grantees had notice of the prior one-fourth reservation in the deed to their grantors.