Ann SIBERT, Josephine Evoniuk, Margie Orbanosky, Ben S. Stuss, and Steven R. Stuss, Plaintiffs and Appellants,

v.

David KUBAS, also known as David V. Kubas; Patricia Kubas; Kubas Family Mineral Trust and Patricia Kubas and Wayne Kubas, Co-Trustees of the Kubas Family Mineral Trust; The Missouri Valley Properties Company, a foreign corporation; McAlester Fuel Company, a foreign corporation; Brazos Young Corporation, a foreign corporation, Defendants and Appellees,

Emmet C. Barney, and all other persons unknown claiming any estate or interest in or lien or encumbrance upon the property described in the complaint, Defendants.

Civ. No. 10638.

Supreme Court of North Dakota.

Nov. 28, 1984.

Evans & Moench, and E.J. Rose, Bismarck, for plaintiffs and appellants; argued by E.J. Rose, Bismarck.

Howe, Hardy, Galloway & Maus, Dickinson, for defendants and appellees David Kubas, also known as David V. Kubas; Patricia Kubas; Kubas Family Mineral Trust and Patricia Kubas and Wayne Kubas, Co-Trustees of the Kubas Family Mineral Trust; appearance by Adair Riopelle Boening, Dickinson.

Fleck, Mather, Strutz & Mayer, Bismarck, for defendant and appellee Missouri Valley Properties Company; appearance by Jane Fleck Romanov, Bismarck.

Pearce, Anderson & Durick, Bismarck, for defendants and appellees McAlester Fuel Company and Brazos Young Corporation; argued by William Patrick Pearce, Bismarck.

PEDERSON, Justice.

The dispositive issue in this case is whether or not a grantee's constructive notice of a third-party interest in minerals alone precludes application of the *Duhig* doctrine.[1] We hold that it does not, and we affirm the judgment quieting title to the designated property, the surface and one-half of the minerals, in the defendants (collectively referred to as Kubas).

It is undisputed that the State of North Dakota owns a one-half interest in the minerals by virtue of a statutory reservation explicitly recited in a properly recorded 1952 deed. The State is not a party to this suit.

It is also undisputed that Mary Stuss, before she conveyed the property to David and Patricia Kubas in 1970, owned the entire surface and the remaining one-half interest in the minerals.

During 1970, Mary conveyed the property to David and Patricia by a warranty deed which contained the following reservation:

"... excepting and reserving unto the grantor one-half (½) of all oil, gas and all other minerals, ..."

This deed was properly recorded in 1970.

Mary, in 1974, by mineral deed, containing a warranty of title, conveyed one-half of the minerals to her children, the plaintiffs (collectively referred to as Sibert). Mary died in 1975.

Sibert filed this quiet title action claiming ownership of one-half of the minerals. The Sibert theory is that Mary reserved to herself the one-half interest in the minerals that was not owned by the State, in the 1970 conveyance to David and Patricia. Kubas asserts that the 1970 deed conveyed to them one-half of the minerals and that Mary's "exception and reservation" only identified the minerals that Mary did not own; those that are concededly owned by the State.

Kubas asserts that the 1970 deed unambiguously warranted title to and conveyed a one-half interest in the minerals to David and Patricia and that, under the *Duhig* doctrine, Sibert is estopped, like Mary would be if she were alive, from asserting title to any minerals by virtue of the reservation in the 1970 deed. Sibert, citing this Court's decision in *Gilbertson v. Charlson*, 301 N.W.2d 144 (N.D.1981), asserts that the *Duhig* doctrine should not be applied to estop her claim to one-half of the minerals under the reservation because David and Patricia had constructive notice, at the time the 1970 deed was executed, that the State owned one-half of the minerals and that Mary, by her reserving to herself, retained the other one-half mineral interest that was not owned by the State.

It is well settled that a conveyance of land, without any exception or reservation of the minerals constitutes a conveyance of 100 percent of the minerals as well as the surface. *See Schulz v. Hauck*, 312 N.W.2d 360 (N.D.1981). Consequently, when a grantor conveys, by warranty deed, the entire surface, excepting and reserving 50 percent of the minerals, he thereby warrants title to and conveys 50 percent of the minerals to the grantee. *Kadrmas v. Sauvageau*, 188 N.W.2d 753 (N.D.1971).

The disposition of this case requires us to construe the legal effect of the 1970 deed.

---

**1.** The doctrine, enunciated in *Duhig v. Peavy-Moore Lumber Company*, 135 Tex. 503, 144 S.W.2d 878 (1940), is that a grantor who, by warranty deed, purports to convey a fractional mineral interest is estopped from asserting title to a reserved fractional mineral interest in contradiction to the interest purportedly conveyed.

Under it, Mary conveyed the entire surface of the property, reserving unto herself 50 percent of the minerals, thereby conveying the entire surface and one-half of the minerals.

■ It is undisputed that at the time of the conveyance Mary owned only one-half of the minerals. Consequently, it was impossible for her to both convey and reserve one-half of the minerals. The result, explained by the *Duhig* doctrine which this Court adopted in *Kadrmas v. Sauvageau,* 188 N.W.2d 753 (N.D.1971), is that Patricia and David, as grantees, received Mary's one-half mineral interest, and Mary is estopped from asserting title to that interest under the reservation clause because "the warranty obligation is superior to the ... [grantors'] reservation rights." *Kadrmas, supra,* 188 N.W.2d at 756.

The rationale for this result which underlies the *Duhig* doctrine is explained in 1 H. Williams and C. Meyers, *Oil and Gas Law,* § 311, p. 580.10 (1983):

"If the grantor has warranted title to land he purports to convey, and if the breach of warranty can be remedied by taking the land from the grantor and giving it to the grantee, then there is no reason for refusing to do so in a title action, whether or not styled as one for breach of warranty. The key question is, not what the grantor purported to retain for himself, but what he purported to give to the grantee. If he undertook to convey half the minerals and had the power to do so, he should be held to his undertaking. The risk of title loss is on the grantor in a warranty deed; ..."

In *Gilbertson, supra,* three cotenants, two sisters and a brother, each owned an undivided one-third interest in the surface and in 95 percent of the minerals. Five percent of the minerals were owned by the State. Thus, each of the three cotenants owned $31\frac{2}{3}$ percent of the minerals. Thereafter, two of the cotenants, being the owners of $63\frac{1}{3}$ percent of the minerals, con-

veyed their interest in the property to the third cotenant, reserving and excepting unto themselves one-half of the minerals. The grantee cotenant asserted that her cotenants had conveyed to her 50 percent of the minerals in addition to the $31\frac{2}{3}$ percent interest she already owned, thereby giving her a total mineral interest of $81\frac{2}{3}$ percent. The two grantor cotenants asserted that it was clear, under the undisputed factual situation, that they had intended to retain for themselves 50 percent of the minerals and to convey only $13\frac{1}{3}$ percent of the minerals to their sister, cotenant grantee. This Court agreed.

Noting the grantor's contention that "*Kadrmas* [application of the *Duhig* doctrine] is inapplicable ... as the grantees were co-tenants with the grantors of the property conveyed between them" this Court concluded:

"Because of the actual notice of the existence of the $31\frac{2}{3}$ percent interest in the minerals to the grantees, the constructive notice of the five percent reservation of the minerals in the state, and the 50 percent reservation of the minerals in the deed by which the grantees received the surface, the grantees were clearly made aware that the grantors were not warranting title to 50 percent of the minerals plus the five percent of the minerals reserved by the state and the $31\frac{2}{3}$ percent of the minerals then owned by the grantees. Under these circumstances, there can be no implied warranty that the grantors are warranting what they have reserved." 301 N.W.2d at 148.

*Gilbertson, supra,* is distinguishable from this case, and we limit its application to the peculiar facts of that case wherein the grantee, prior to the disputed conveyance, owned an outstanding mineral interest in the property conveyed. The grantee cotenant, in *Gilbertson, supra,* knowing that she was the present owner of $31\frac{2}{3}$ percent of the minerals, unpersuasively asserted that her grantor cotenants, by re-

serving one-half of the minerals, had intended to convey an additional one-half of the minerals to her. The grantee's outstanding fractional mineral ownership warranted the nonapplication of the *Duhig* doctrine and the refusal to estop the grantors from asserting title to the reserved interest under the conveyance to their cotenant grantee who had actual and constructive notice of the outstanding mineral ownership.

We believe that Sibert may have been misled by our dicta in *Gilbertson*.[2] In that case, as in this case, the State was not a party and its interest was conceded. The constructive notice referred to in *Gilbertson* related to the five percent interest of the State. Factors other than constructive notice of the State's interest were controlling in *Gilbertson*.

We conclude that, on the facts of this case, the *Duhig* doctrine, as applied by this Court in *Kadrmas*, is applicable, and the variation of the *Duhig* doctrine as applied by this Court in *Gilbertson* is not. We refuse to extend *Gilbertson's* application to situations where, as in this case, a grantee, without an outstanding mineral interest in the conveyed property, merely has notice of an outstanding mineral interest in a third party which is not in conflict with other facts actually or constructively known by that grantee. Such an extension would unduly impair the function of warranty deeds and the principle recognized in *Kadrmas* that a warranty obligation is superior to a grantor's reservation rights.[3] Absent a *Gilbertson* fact situation, a grantee's notice, actual or constructive, of a third party's outstanding mineral interest should not jeopardize his rights against a grantor who has made a conveyance to him by warranty deed. We find support for this conclusion in 1 H. Williams and C. Meyers, *Oil and Gas Law*, § 311, pp. 580.-18–580.20 (1983):

> "Actual and constructive notice do not bar suits for breach of warranty by a grantee nor do they bar the grantee's acquisition of the after-acquired title by estoppel by deed. There is no adequate reason for them to bar enforcement in the grantee's favor of a deed as written. The contest between grantor and grantee should be resolved by the language of the deed between them. Only one meaning can be drawn from the deed standing alone: the grantee is to receive that percentage or fractional interest in the land not reserved to the grantor, since the deed purports to deal with 100% of the minerals. If both grant and reservation cannot be given effect, the reservation must fail. The risk of title loss is on the grantor." [Footnotes omitted.]

We conclude that the 1970 deed unambiguously warranted title to and conveyed the entire surface and one-half of the minerals in the property to David and Patricia. Applying the *Duhig* doctrine, we hold that Sibert is estopped from asserting title to the minerals under the reservation clause contrary to that conveyance.

The district court admitted extrinsic evidence, over Sibert's objection, relative to the intent of the parties in executing the 1970 deed. We need not consider whether or not the district court erred in admitting extrinsic evidence of the parties' intent, because if that was error it was harmless. The court reached a correct result supported by a proper legal interpretation of the deed on its face. *Yon v. Great Western Development Corporation*, 340

---

2. We are aware of the analysis which has been made of our opinion in *Gilbertson: e.g.,* Professor Richard C. Maxwell, *"Some Comments On North Dakota Oil And Gas Law—Three Cases From The Eighties"*, 58 ND Law Rev 431 (1982); Professor Willis A. Ellis, *"Rethinking The Duhig Doctrine"*, 28 Rocky Mtn. Min. Law Institute 947, 961 (1983); Ms. Lisa B. Plumly, *"Convey-* ances of Fractional Interests: North Dakota Supreme Court Repudiates the Duhig Rule, Gilbertson v. Charlson"*, 17 Tulsa Law Journal 117 (1981).

3. The possible inconsistency with the provision of § 47–09–13, NDCC, must await future arguments.

N.W.2d 43 (N.D.1983). Ordinarily, all evidence offered should be received when the trial is not to a jury. *Schuh v. Allery*, 210 N.W.2d 96, 99 (N.D.1973).

It is significant to note that in this case no party sought to reform the deed based on alleged mutual mistake, fraud, or other ground. Consequently, this opinion in no way operates to preclude, in a reformation case, the proper introduction of extrinsic evidence relevant to the reformation claim. *See, Ell v. Ell*, 295 N.W.2d 143 (N.D.1980).

In accordance with this opinion, the judgment of the district court quieting title to the property, the surface and one-half of the minerals, in Kubas is affirmed.

ERICKSTAD, C.J., and GIERKE, SAND and VANDE WALLE, JJ., concur.