Ernest W. **MAU** and Sharon M. Mau, Plaintiffs and Appellees,

v.

Carol **SCHWAN** and Gabriel Schwan, Defendants and Appellants,

and

General Atlantic Energy Corporation, Estuary Corporation and Thermal Exploration, Inc., Defendants.

Civ. No. 890396.

Supreme Court of North Dakota.

Aug. 9, 1990.

Peterson & Wilkes, Bowbells, for plaintiffs and appellees; argued by Jeffrey J. Peterson. Appearance by Michel W. Stefonowicz.

Stokes Law Offices, Wahpeton, for defendants and appellants; argued by A.W. Stokes.

MESCHKE, Justice.

Carol and Gabriel Schwan[*] appealed from a judgment denying reformation of a contract and a deed, and quieting title to oil, gas, and minerals in Ernest W. and Sharon M. Mau. We affirm.

In 1943 Carol Schwan's father, Louis Dockter, purchased a quarter-section of land in Renville County, including all minerals. Later, Dockter and his wife conveyed 90 of the 160 mineral acres to a third party. Dockter's wife died in 1966. In 1970, Dockter contracted to sell the quarter-section to Maus. The contract reserved part of the oil, gas, and minerals:

> excepting and reserving to [Dockter] an undivided one-half (½) of all the oil, gas and minerals in and under the described land, it being the intent to convey herewith an undivided one-half (½) of all the oil, gas and minerals in and under the described land. . . .

When Dockter died in 1972, Carol Schwan, an only child, inherited her father's interests. The final decree in Dockter's estate distributed the land to her, "subject to Contract for Deed dated 8–6–70" and also distributed to her "$^{35}/_{160}$ of the oil, gas and minerals" under the land.

In July 1978, Maus paid Schwans the final installment on the contract, and Schwans executed and delivered a warranty deed to the Maus, containing a reservation identical to the one in the contract:

> excepting and reserving to [Schwans] an undivided one-half (½) of all the oil, gas and minerals in and under the described land, it being the intent to convey herewith an undivided one-half (½) of all the oil, gas and minerals in and under the described land.

Maus first leased for oil and gas development in 1976 and continued to do so after 1978. In 1986, Schwans also leased for oil and gas to General Atlantic Energy Corporation. In January 1987, General filed an affidavit in the office of the Register of Deeds for Renville County showing that a producing oil and gas well had been completed on this land. General refused to pay royalties until mineral ownership was clarified. Maus sued Schwans to quiet title to

70 mineral acres. Schwans counterclaimed for reformation of the conveyances, claiming they were entitled to 35 mineral acres, half of the minerals owned by Dockter when he contracted to sell to Maus, and alleging fraud, undue influence, and mistake.

After a trial without a jury, the trial court ruled that Schwans "submitted very little evidence which would tend to show that the contract for deed and the deed were the result of fraud, undue influence or mistake." The trial court determined:

### I.

[Schwans] have failed to show by clear, satisfactory, specific and conv[i]ncing evidence any grounds for reformation of the contract for deed or the deed in this case.

### II.

The presumption that those documents accurately reflect the [i]ntention of the parties has not been overcome.

### III.

[Schwans] counterclaim for reformation must ... be denied.

### IV.

The legal effect of the reservation language in the contract for deed and deed was to convey to plaintiffs all the 70 mineral acres remaining as part of the premises.

The judgment decreed that Schwans had no interest in the minerals and that Schwans' oil and gas lease to General was void. Schwans appealed.

■ On appeal, Schwans argue that Maus should be estopped from "receiving any more than 35 mineral acres" and that the documents of conveyance should be reformed for mutual mistake.

Ernest Mau testified that, on the day in 1970 when he received the executed contract from Dockter, Mau promptly went to record it. At the register of deeds, Mau first learned that only 70 mineral acres

remained because Dockter had earlier sold 90 mineral acres. Mau testified that he immediately returned to the attorney's office and complained, but the attorney told him that he would get those 70 mineral acres and that he could sue Dockter for the shortfall of 10 acres. Mau testified that he decided not to pursue the matter because 70 mineral acres was close enough to one-half. From this evidence, Schwans argue that Mau "should be estopped by his conduct." Schwans argue that Mau "knowingly did nothing upon discovering the mistake," while "Schwan had no reason to suspect that she had less than the 35 mineral acres" described in her decree of distribution from her father's estate. But, Schwans put the estoppel shoes on the wrong feet.

■ Estoppel binds Schwans, not Maus. "[A] grantor who, by warranty deed, purports to convey a fractional mineral interest is estopped from asserting title to a reserved fractional mineral interest in contradiction to the interest purportedly conveyed." *Sibert v. Kubas*, 357 N.W.2d 495, 496, n. 1 (N.D.1984), citing *Duhig v. Peavy–Moore Lumber Company*, 135 Tex. 503, 144 S.W.2d 878 (1940). In *Sibert*, applying the *Duhig* doctrine, we explained that " '[t]he key question is, not what the grantor purported to retain for himself, but what he purported to give to the grantee.' " 357 N.W.2d at 497. " 'If both grant and reservation cannot be given effect, the reservation must fail.' " *Id.* at 498. Dockter's reservation cannot be given effect.

Before *Sibert*, this court decided a similar case and explained that estoppel was the reason. *Kadrmas v. Sauvageau*, 188 N.W.2d 753 (N.D.1971). Sauvageaus conveyed land to Kadrmases, reserving one-half of all minerals in the warranty deed. However, the State then owned half of the minerals and Sauvageaus only owned half. "The question [was]: could the Sauvageaus retain one-half of the minerals when they warranted the title to one-half and owned but one-half?" 188 N.W.2d at 755. The answer was no. "[They] could not convey and warrant, and reserve and retain, the same thing at the same time, but the warranty obligation is superior to the Sauva-

geaus' reservation rights." *Id.* at 756. Therefore, Kadrmases' were entitled to the half of the minerals that Sauvageaus owned.

*Kadrmas* explained that this result was based on estoppel by warranty, a subset of estoppel by deed, which precludes a warrantor of title from questioning the title warranted. 188 N.W.2d at 756. Similarly, estoppel bars Schwans from questioning the warranty of minerals to Maus.

In the contract for deed, Dockter reserved one-half and conveyed one-half of the oil, gas, and minerals, when he then owned less than one-half, only 70 of the 160 mineral acres in the quarter. Likewise, in the warranty deed, Schwans reserved one-half and conveyed one-half of the oil, gas, and minerals, when they had less than one-half to convey. Although these documents conveyed all of the surface acreage and one-half of the mineral acreage to Maus, Maus received only that part of the mineral acreage that Dockter and Schwans had power to convey, 70 mineral acres.

North Dakota statutes reinforce this result. NDCC 47–09–16 says:

A transfer vests in the transferee all the actual title to the thing transferred which the transferor then has unless a different intention is expressed or is necessarily implied.

NDCC 47–10–08 says:

Every grant of an estate in real property is conclusive against the grantor and every one subsequently claiming under him.

The *Duhig* doctrine, as explained in our *Sibert* and *Kadrmas* opinions, prevents Schwans from disputing their warranty, and the warranty of Dockter, to the oil, gas, and minerals actually transferred to Maus. The grants by Dockter and Schwans are conclusive against them unless grounds exist to reform those conveyances. *Sibert*, 357 N.W.2d at 499; *Ell v. Ell*, 295 N.W.2d 143 (N.D.1980). This brings us to Schwans' argument about reformation, an argument that was not made in *Kadrmas* or *Sibert*, but that was recognized in *Sibert* and decided in *Ell*.

In *Ell*, the trial court granted reformation "to conform to the agreement or intention of the parties." 295 N.W.2d at 149. A contract for deed had been made in 1964 and a quitclaim deed issued in 1971, neither of which contained a reservation of minerals. This court affirmed reformation, adding a reservation and concluding that parol evidence that the parties intended a reservation of all minerals was clear, satisfactory, specific, and convincing. *Id.* at 151. But Schwans offered no clear evidence of a reservation different than the one Dockter included in his contract.

Schwans sought reformation on several grounds, including mutual mistake. The trial court refused reformation. Nevertheless, Schwans urge that this case should not be decided on the language of the title documents alone and that mistake was a satisfactory ground for reformation.

■ Evidence extrinsic to the documents is relevant to a claim for reformation based on fraud or mistake. *Ell*, 295 N.W.2d at 149. In approving reformation of conveyance documents in *Ell* to include the intended, but omitted, mineral reservation, we summarized the relevant principles for deciding a reformation claim:

The burden of proof rests on the party who seeks reformation to prove that the written instrument does not fully or truly state the agreement that the parties intended to make.... "[P]arol evidence of an alleged mutual mistake as a basis for the modification of a written instrument must be clear, satisfactory, specific and convincing, and a court of equity will not grant the high remedy of reformation even upon a mere preponderance of the evidence, but only upon the certainty of error."

Each case involving the reformation of a contract on grounds of fraud or mutual mistake must be determined upon its own particular facts and circumstances. In considering whether or not a mutual mistake exists, the court can properly look into the surrounding circumstances and take into consideration *all* facts which disclose the intention of the parties. (Citations omitted).

*Id.* at 150. On review, we must look to the evidence and the findings about reformation with "due regard ... to the opportuni-

ty of the trial court to judge the credibility of the witnesses." NDRCivP 52(a). In this case, we review the trial court's finding that there was insufficient evidence of a mistake warranting reformation.

■ At the trial, Carol Schwan testified that, when Dockter contracted, he had problems associated with aging and medication, including dizziness, chest pains, and memory lapses. In addition to marshalling this evidence, Schwans argue that Maus retained the attorney who prepared the contract and that Ernest Mau admitted early awareness of a mistake about the quantity of minerals that he actually received. Schwans urge that these circumstances evidence that Dockter intended to retain one-half of his remaining minerals but mistakenly failed to do so. Schwans argue that "[s]uch a mistake ... could not result in a meeting of the minds or consent to the contract" and that "Mau should either have rescinded ... or asked for a new contract when he discovered that he was receiving a lesser amount of mineral acres [than] he felt he had contracted for." Characterizing this evidence as "clear, specific and convincing that a mistake had been made," Schwans ask us to reverse the trial decision refusing reformation.

At the trial, Ernest Mau testified that Dockter had been very definite about what he wanted to do and on terms for the sale, including his insistence on a $4,000 downpayment. Marshalling this evidence on appeal, Maus also dispute that they retained the attorney who prepared the contract, pointing out that the same attorney probated Dockter's estate for Schwans. Maus emphasize that they did not learn about their shortfall of 10 mineral acres until after the contract had been completed when they "decided not to pursue the matter."

■ The trial court concluded that Schwans "submitted very little evidence which would tend to show ... mistake." We agree.

NDCC 9–03–13 defines mistake:

*Mistake of fact defined.* Mistake of fact is a mistake not caused by the neglect of a legal duty on the part of the person making the mistake and consisting in:

1. An unconscious ignorance or forgetfulness of a fact, past or present, material to the contract; or

2. Belief in the present existence of a thing material to the contract which does not exist, or in the past existence of such a thing which has not existed.

NDCC 32–04–17 authorizes reformation for mutual mistake:

*Revision of contract for fraud or mistake.*—When, through fraud or mutual mistake of the parties, or a mistake of one party which the other at the time knew or suspected, a written contract does not truly express the intention of the parties, it may be revised on the application of a party aggrieved so as to express that intention so far as it can be done without prejudice to rights acquired by third persons in good faith and for value.

Generally, "[f]or a mutual mistake to justify reformation of an agreement, 'it must be shown that, at the time of the execution of the agreement ... both parties intended to say something different from what was said in the instrument.'" *Meyer v. McCormick, Inc.,* 445 N.W.2d 21, 24 (N.D.1989), quoting from *Cokins v. Frandsen,* 141 N.W.2d 796, 799 (N.D.1966). A mutual mistake was not shown by Schwans.

Dockter's contract expressed an intent to convey "one-half (½) of all the oil, gas and minerals," and Maus expected to receive one-half. There is no evidence that Maus "knew or suspected" a mistake by Dockter "at the time" that the contract was executed. Maus' discovery, shortly afterwards, that the mineral acreage received was less than expected, was not a mistake "at the time known or suspected."

■ Nor could Schwans support a unilateral mistake under the statute, because there was no misrepresentation by Maus and because Maus had no prior knowledge of the mistake claimed by Schwans. 17 Am.Jur.2d *Contracts* § 146 (1964). Furthermore, since the 10 acre shortfall was a disadvantage to Maus, not an advantage, it is not the kind of mistake which warrants reformation for Dockter, the grantor, as "a party aggrieved." We conclude that the

evidence did not show a mistake compelling reformation for Schwans.

An appellant must demonstrate that challenged findings are clearly erroneous. A finding is clearly erroneous only when, on the entire evidence, we are left with a definite and firm conviction that a mistake has been made. *Addy v. Addy*, 456 N.W.2d 506, 510 (N.D.1990). We are not convinced that a mistake was made in this case. We conclude that the trial court's finding, that there was no mistake justifying reformation, was not clearly erroneous.

Since we affirm a judgment in favor of Maus, it is unnecessary for us to consider their argument that the statute of limitations barred any relief to Schwans. We affirm.

ERICKSTAD, C.J., and LEVINE, VANDE WALLE and GIERKE, JJ., concur.