2010 ND 140

Roger J. MELCHIOR, aka Melchoir, and Barbara J. Melchior, aka Melchoir, Plaintiffs and Appellants

v.

Kenneth O. LYSTAD, Hope Elaine Lystad, Brent K. Rodenhizer, Naomi J. Rodenhizer, and American Trust Center, as Trustee of the Lystad Family Irrevocable Mineral Trust, Defendants and Appellees.

No. 20100045.

Supreme Court of North Dakota.

July 13, 2010.

Rehearing Denied Aug. 17, 2010.

Jon Bogner, Dickinson, ND, for plaintiffs and appellants.

Michael J. Maus, Dickinson, ND, for defendants and appellees.

SANDSTROM, Justice.

[¶ 1] Roger and Barbara Melchior appeal a district court's award of summary judgment to the Lystad family and their trustee, granting the trustee quiet title to mineral interests in land in Mountrail County. We affirm.

I

[¶ 2] In 1973, Walter and Edith Halvorson conveyed property to Kenneth and Hope Lystad. At the time, the Halvorsons owned a one-half interest in the oil and gas, as well as all of the gravel, in and under the land. The contract for deed stated that the Halvorsons reserved "an undivided one-half of the oil, gas and gravel in, on and under the above-described lands." The warranty deed, executed in 1983, contained the same provision. In 1996, the Halvorsons conveyed their mineral interests in the land to Roger and Barbara Melchior. In 2008, the Lystads conveyed their mineral interests in the land to the American Trust Center, as trustee of the Lystad Family Irrevocable Mineral Trust.

[¶ 3] In 2009, the Melchiors sought quiet title to one-fourth of the oil, gas, and gravel interests in, on, and under the land. The Lystads and their trustee filed an answer and counterclaim, seeking quiet title to an undivided one-half interest in the minerals in the name of the trustee. The Melchiors moved for summary judgment, arguing there were no disputed facts and they were entitled to judgment as a matter of law, because the 1973 contract for deed and the 1983 warranty deed were based on a mutual mistake of the parties. They claimed the parties intended for the Halvorsons to reserve one-half of the mineral interests owned by them and for the Lystads to receive the other one-half of the mineral interests owned by the Halvorsons.

[¶ 4] The district court granted summary judgment in favor of the Lystads and the trustee under the *Duhig* rule, concluding the Lystads received one-half of the total mineral interests, because the deed

purported to deal with all of the mineral interests in the land. The district court granted the trustee quiet title to the mineral interests in the land, with the exception of a parcel that the Lystads had previously conveyed to a third party.

[¶ 5] The Melchiors appeal, arguing the district court erred in failing to reform the warranty deed on the basis of mutual mistake.

[¶ 6] The district court had jurisdiction under N.D. Const. art. VI, § 8, and N.D.C.C. § 27–05–06. The appeal is timely under N.D.R.App.P. 4(a). This Court has jurisdiction under N.D. Const. art. VI, §§ 2 and 6, and N.D.C.C. § 28–27–01.

## II

[¶ 7] Under N.D.R.Civ.P. 56(c), summary judgment is appropriate "if either litigant is entitled to judgment as a matter of law and if no dispute exists as to either the material facts or the inferences to be drawn from undisputed facts, or if resolving factual disputes will not alter the result." *Langer v. Pender*, 2009 ND 51, ¶ 10, 764 N.W.2d 159 (quoting *Duemeland v. Norback*, 2003 ND 1, ¶ 8, 655 N.W.2d 76). Whether the district court properly granted a summary judgment motion "is a question of law that we review de novo on the record." *Trinity Hosps. v. Mattson*, 2006 ND 231, ¶ 10, 723 N.W.2d 684. "The degree of response required of a party opposing a motion for summary judgment is set by the scope of the motion." *Zueger v. Carlson*, 542 N.W.2d 92, 95 (N.D.1996). Under N.D.R.Civ.P. 56(c), "[s]ummary judgment, when appropriate, may be rendered against the moving party." Here the issue of mutual mistake was fully joined and was directly before the district court. "When there has been a motion for summary judgment, but no cross-motion, the court already is engaged in determining if a genuine issue of material fact exists, the

parties have been given an opportunity to present evidence to support or refute the request, and the weight of authority is that summary judgment may be rendered in favor of the party opposing the motion without a formal cross-motion." *Trinity Health v. North Central Emergency Servs.*, 2003 ND 86, ¶ 13, 662 N.W.2d 280 (citing 10A Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, *Federal Practice and Procedure* § 2720 (3d ed.1998)).

### A

[¶ 8] In cases involving an over-conveyance of minerals, this Court has applied what is commonly called the *Duhig* rule. *See Gawryluk v. Poynter*, 2002 ND 205, ¶ 11, 654 N.W.2d 400; *Miller v. Kloeckner*, 1999 ND 190, ¶ 9, 600 N.W.2d 881; *Acoma Oil Corp. v. Wilson*, 471 N.W.2d 476 (N.D.1991); *Mau v. Schwan*, 460 N.W.2d 131 (N.D.1990); *Sibert v. Kubas*, 357 N.W.2d 495 (N.D.1984); *Kadrmas v. Sauvageau*, 188 N.W.2d 753 (N.D.1971). "The *Duhig* rule says that where a grantor conveys land in such a manner as to include 100% of the minerals, and then reserves to himself 50% of the minerals, the reservation is not operative where the grantor owns only 50% of the minerals. The deed is construed as undertaking the transfer of 50% of the minerals to the grantee. Both this grant and the reservation cannot be given effect, so the grantor loses because the risk of title loss is on him." *Miller*, at ¶ 9 (quoting 1 Patrick H. Martin & Bruce M. Kramer, *Williams & Meyers Oil and Gas Law* § 311, p. 580.39 (1998)). In *Gawryluk v. Poynter*, 2002 ND 205, 654 N.W.2d 400, this Court explained the history and rationale behind the *Duhig* rule:

In *Duhig* [*v. Peavey–Moore Lumber Co.*, 135 Tex. 503] 144 S.W.2d [878,] 878–79 [ (Tex.1940) ], a third party owned an

outstanding one-half mineral interest in certain land, and the grantor owned the surface and the remaining one-half mineral interest. The grantor conveyed the surface to the grantee by warranty deed but reserved one-half of all the minerals under the land. *Id.* The grantor and grantee both claimed the one-half mineral interest that was not owned by the third party. *Id.* at 879. The Texas Supreme Court concluded the grantee owned the surface and a one-half mineral interest, the third party owned the outstanding one-half mineral interest, and the grantor owned nothing. *Id.* at 880. In reaching that conclusion, the court employed a two-step analysis under principles of estoppel. *Id.* The court observed the grant clause gave the grantee all of the surface and a one-half mineral interest but the reservation clause reserved a one-half mineral interest in the grantor. *Id.* Because the grantor purported to retain a one-half mineral interest and the other one-half mineral interest was owned by a third party, the grantor breached the clause warranting title to a one-half mineral interest. *Id.* By analogy to the doctrine of estoppel by deed against assertion of an after-acquired title, the court held the grantor was estopped to assert the reservation of a one-half mineral interest. *Id.*

In 1 William[s] & Meyers *Oil and Gas Law*, § 311, p. 580.39 (2001) the authors explain the *Duhig* rule:

The *Duhig* rule says that where a grantor conveys land in such a manner as to include 100% of the minerals, and then reserves to himself 50% of the minerals, the reservation is not operative where the grantor owns only 50% of the minerals. The deed is construed as undertaking the transfer of 50% of the minerals to the grantee. Both this grant and the reservation

cannot be given effect, so the grantor loses because the risk of title loss is on him.

The effect of *Duhig* is that a grantor cannot grant and reserve the same mineral interest, and if a grantor does not own a large enough mineral interest to satisfy both the grant and the reservation, the grant must be satisfied first because the obligation incurred by the grant is superior to the reservation. The interpretation of deeds within the framework of the *Duhig* rationale provides certain and definite guidelines in the interpretation of property conveyances and in title examinations. *See* 1 Williams & Meyers, at § 313, p. 616–616.1.

This Court's application of *Duhig* has been based on estoppel by warranty, a subset of estoppel by deed, which precludes a warrantor of title from questioning the title warranted. *Miller v. Kloeckner*, 1999 [ND] 190, ¶ 13, 600 N.W.2d 881 (citing *Mau v. Schwan*, 460 N.W.2d 131, 134 (N.D.1990)). *See also Acoma Oil Corp. v. Wilson*, 471 N.W.2d 476, 479–80 (N.D.1991); *Sibert v. Kubas*, 357 N.W.2d 495, 497 (N.D.1984). In *Miller*, at ¶ 16–18 we recognized the rationale from *Duhig* may apply to a deed with no warranty provisions, and the key question is not what the grantor purported to retain for himself, but what the grantor purported to give the grantee. *See* 1 Williams & Meyers, at § 311, p. 580.34.

*Gawryluk v. Poynter*, 2002 ND 205, ¶¶ 12–14, 654 N.W.2d 400.

B

▆▆▆ [¶ 9] The *Duhig* rule applies here. The Melchiors do not dispute that "[b]ased upon North Dakota's following of the '*Duhig*' rule such a mineral reservation would normally result in all of the 50% oil

and gas interest owned by the grantors (Halvorsons) passing to the grantees (Lystads)." The Melchiors' sole argument on appeal is that the district court erred when it failed to reform the warranty deed based upon mutual mistake.

[¶ 10] This Court addressed the argument of mutual mistake under the *Duhig* rule in *Mau v. Schwan,* 460 N.W.2d 131 (N.D.1990). In *Mau,* the Schwans conveyed land to the Maus, reserving for themselves "an undivided one-half (½) of all the oil, gas and minerals" in the land. *Mau,* 460 N.W.2d at 132. The Schwans owned less than half of the mineral interests in the land. *Id.* The Maus brought a quiet title action, and the Schwans counterclaimed for reformation of the conveyances, alleging fraud, undue influence, and mistake. *Id.* at 132–33. The district court found the Schwans had no interest in the minerals and ruled in favor of the Maus, and this Court affirmed. *Id.* The Maus learned soon after executing the contract that less than half of the mineral interests remained to convey, but "decided not to pursue the matter because 70 mineral acres was close enough to one-half." *Id.* at 133. The Schwans argued on appeal that the doctrine of estoppel should apply, because the Maus "knowingly did nothing upon discovering the mistake." *Id.* This Court, citing the *Duhig* rule, concluded the "Schwans put the estoppel shoes on the wrong feet." *Id.* Addressing the reformation argument, this Court summarized the principles for deciding a reformation claim:

The burden of proof rests on the party who seeks reformation to prove that the written instrument does not fully or truly state the agreement that the parties intended to make.... "[P]arol evidence of an alleged mutual mistake as a basis for the modification of a written instrument must be clear, satisfactory, specific and convincing, and a court of equity will not grant the high remedy of reformation even upon a mere preponderance of the evidence, but only upon the certainty of error."

Each case involving the reformation of a contract on grounds of fraud or mutual mistake must be determined upon its own particular facts and circumstances. In considering whether or not a mutual mistake exists, the court can properly look into the surrounding circumstances and take into consideration *all* facts which disclose the intention of the parties. (Citations omitted).

*Id.* at 134 (quoting *Ell v. Ell,* 295 N.W.2d 143, 150 (N.D.1980)). This Court noted that generally, for a mutual mistake to justify reformation of a contract, "it must be shown that, *at the time* of the execution of the agreement . . . both parties intended to say something different from what was said in the instrument." *Id.* at 135 (citations omitted) (emphasis added). This Court stated, "[The] contract expressed an intent to convey 'one-half (½) of all the oil, gas and minerals,' and Maus expected to receive one-half. There is no evidence that Maus 'knew or suspected' a mistake by Dockter 'at the time' that the contract was executed." *Id.* This Court also concluded the Schwans could not claim a unilateral mistake, because "there was no misrepresentation by Maus and because Maus had no prior knowledge of the mistake claimed by Schwans." *Id.* This Court concluded that "the evidence did not show a mistake compelling reformation." *Id.* at 135–36.

[¶ 11] Here, the Melchiors argue that the contract for deed and warranty deed were based on a mutual mistake of the parties and thus should be reformed. The Melchiors rely on oil and gas leases and ratifications and rental division orders executed subsequent to the contract for deed,

arguing the documents illustrate the Halvorsons' and Lystads' true intention to reserve and convey fifty percent of the mineral interests owned by them, not fifty percent of the total mineral interests. In 1977, the Halvorsons signed an oil and gas lease to Gulf Oil Corporation. On the same day, the Halvorsons and Lystads signed a ratification and rental division order, stating that in the event of delay rental payments, the Halvorsons would be paid eighty dollars and the Lystads would be paid nothing. Also on the same day, the Lystads signed an oil and gas lease to Gulf Oil Corporation, and the Halvorsons and Lystads signed a different ratification and rental division order under which the Lystads would be paid eighty dollars in the event of delay rental payments and the Halvorsons would be paid nothing. The Melchiors argue the reciprocal documents illustrate the parties' mutual intention that the Halvorsons originally conveyed fifty percent of the mineral interests owned by them, not fifty percent of the total mineral interests. The Melchiors claim the ratification and rental division orders stated the Halvorsons and the Lystads "were to be paid rentals for 80 mineral acres," or one-quarter of the total mineral interests each.

[¶ 12] First, the ratifications and rental division orders state only that eighty dollars would be paid to the Lystads and Halvorsons in the event of delay rental payments. While the Melchiors assert that the ratifications and rental division orders "stated that the Halvorsons and the Lystads each owned 80 mineral acres in the premises, which would mean that the Halvorsons and the Lystads agreed that they each owned one-half of the 160 mineral acres which were owned by the Halvorsons when the Contract For Deed and the Warranty Deed were executed," such an argument is without merit. The ratifications and rental division orders do not state that the 80 dollars reflected any par-

ticular number of acres of land or any intent regarding how the mineral rights in the land were to be divided. Furthermore, the ratifications and rental division orders do not reflect that the Lystads knew the Halvorsons had only fifty percent of the mineral rights in the land to convey. The ratifications and rental divisions would have been consistent with the Halvorsons having had one hundred percent and having conveyed fifty percent of all the mineral rights to the Lystads.

■ [¶ 13] Second, the ratifications and rental division orders were executed in 1977, four years after the contract for deed. For a mutual mistake to justify reformation of a contract, "it must be shown that, *at the time* of the execution of the agreement . . . *both parties* intended to say something different from what was said in the instrument." *Mau*, 460 N.W.2d at 135 (citations omitted) (emphasis added). The Melchiors offered the district court no evidence of mutual mistake at the time of contracting in 1973. The Melchiors argue the warranty deed, which was executed in 1983, six years after the ratifications and rental division orders, should be reformed, but the warranty deed contains identical mineral reservation language to that of the contract for deed. The Melchiors moved for summary judgment on the basis of undisputed facts, but provided the district court with no evidence of the intention of the parties at the time of contracting.

■ [¶ 14] We cannot say, based on the information available to the district court, that it erred in granting summary judgment to the Lystad family and their trustee. "[P]arol evidence of an alleged mutual mistake as a basis for the modification of a written instrument must be clear, satisfactory, specific and convincing, and a court of equity will not grant the high

remety of reformation even upon a mere preponderance of the evidence, but only upon the certainty of error." *Mau*, 460 N.W.2d at 134 (citations omitted). Mere speculation is not enough to defeat summary judgment, and a scintilla of evidence is not sufficient to support a claim. *Barbie v. Minko Construction, Inc.*, 2009 ND 99, ¶ 6, 766 N.W.2d 458.

[¶ 15] "[W]here a grantor conveys land in such a manner as to include 100% of the minerals, and then reserves to himself 50% of the minerals, the reservation is not operative where the grantor owns only 50% of the minerals. The deed is construed as undertaking the transfer of 50% of the minerals to the grantee." *Miller v. Kloeckner*, 1999 ND 190, ¶ 9, 600 N.W.2d 881 (quoting 1 Patrick H. Martin & Bruce M. Kramer, *Williams & Meyers Oil and Gas Law* § 311, p. 580.39 (1998)). "[T]he grantor loses because the risk of title loss is on him." *Id.*

### III

[¶ 16] We affirm the district court's grant of summary judgment to the Lystads and their trustee.

[¶ 17]   DANIEL J. CROTHERS, MARY MUEHLEN MARING, and CAROL RONNING KAPSNER, JJ., concur.

GERALD W. VANDE WALLE, C.J., concurs in the result.