No. 18,998.

GERALD DIXON v. HARRY R. ABRAMS.
(357 P. [2d] 917)

Decided December 19, 1960. Rehearing denied January 9, 1961.

Messrs. SCHMIDT & SCHMIDT, for plaintiff in error.

Mr. OAKLEY WADE, for defendant in error.

*In Department.*

Opinion by MR. JUSTICE DAY.

WE will refer to the parties by name. The action involves an attempt by Abrams to quiet title in himself to a ten per cent interest in minerals in lands to which he has title to the surface in its entirety and in which he admittedly has title to at least eighty per cent of the mineral rights. To put it another way, Abrams sought by court decree to increase his eighty per cent mineral interest to ninety per cent by cutting out a claimed ten per cent interest deeded to Dixon by the County Treasurer after tax sale.

The cause was submitted to the court on an agreed statement of facts and both Abrams and Dixon asked the court to determine their respective rights. One of the agreements made by the parties was that the tax sale and Treasurer's deed were regular and valid in all respects, if the County had, in fact, acquired anything to convey. The conclusions of law made by the court awarded the mineral interest involved to Abrams, and it is from the decree entered pursuant thereto that Dixon brings error.

The history of the title pertinent to the problem presented begins with a conveyance by warranty deed from R. E. George and Margaret George to M. N. Johnson, whereby Johnson acquired title to all of the surface

and ninety per cent of the minerals. It is agreed that the Georges successfully severed from the land a ten per cent interest in minerals because the deed to Johnson provided: "First parties hereby expressly reserve ten per cent of all oil and mineral rights to the above described land." This ten per cent interest, therefore, is not in dispute.

In 1931, M. N. Johnson conveyed to Paul Mountcastle by deed containing the following language: "Reserving to the *party of the first part* ten per cent of all oil and mineral rights on the land above described." It is to be noted that no mention is made of the ten per cent mineral interest previously reserved by the Georges. It is Abrams' contention that because of this omission Johnson did not in fact reserve an additional ten per cent mineral right for himself, but succeeded only in excepting from the conveyance the ten per cent mineral interest previously reserved by and vested in the Georges.

Additional material facts agreed to by the parties are:

1. After the conveyance by Johnson to Mountcastle, the ten per cent mineral interest reserved by Johnson appeared on the assessment rolls of the county assessed to M. N. Johnson and taxes were levied thereon annually thereafter.

2. Mountcastle held title from 1931 until 1949 when he conveyed, by warranty deed, to Abrams. This deed contains the following exception: "Subject to a reservation of 10% of the undivided mineral interests owned by M. N. Johnson; a 3 3/4ths % of the undivided mineral interests owned by M. O. Andrews and a 6¼% of the undivided mineral rights owned by R. E. George and Margaret George." The parties all agree that the M. O. Andrews' three and three-fourths per cent plus the Georges' six and one-fourth per cent represent the total ten per cent interest reserved by the Georges as above mentioned.

In 1951, Dixon obtained a Treasurer's deed to the subject mineral interest. Four years later, in 1955, Abrams

wrote a letter to Dixon purporting to give notice "of intention to protest and contest any conveyance of any kind of title by anyone to anyone of any part or percent of the oil or mineral rights," referring particularly to the Treasurer's deed to Dixon. In this letter Abrams acknowledged that he knew of the Johnson mineral reservations, about it being assessed and about the tax sale, and stated, "I called for a tax title in 1951 but at the time of the sale I was out of town * * * I forgot to notify the County Treasurer of my inability to be present." However, Abrams did nothing more about the tax sale until he instituted this suit in 1956, approximately a year and a half after he wrote the letter to Dixon.

The trial court based its conclusion of law upon the decision of this court in *Brown v. Kirk,* 127 Colo. 453, 257 P. (2d) 1045. In so doing the court erred.

The factual situation in the Brown case is not present in the case at bar, and failure to distinguish such differences led the court to its erroneous conclusion.

The material facts of the instant case differ from those of Brown v. Kirk in the following important particulars: 1. Notice; 2. No privity between the parties; and 3. The rights created by the tax sale and treasurer's deed. None of these facts are present in Brown v. Kirk. There the Browns were grantors, and Kirk and one Linch were grantees. Previous to the conveyance the parties were in privity by contract, and the court was, therefore, called upon to determine the rights of the parties to the deed and what Brown had conveyed and what the grantees had received. In the Brown case the court was persuaded by the fact that the Browns in their deed to Kirk and Linch had warranted fifty per cent of the mineral reservation and that, therefore, they could not reduce what had been conveyed to Kirk and Linch by another twenty-five per cent.

Reduced to a simple statement, the court held in the Brown case that Kirk and Linch thought they were getting a fifty per cent mineral right, that the Brown

deed warranted the title to fifty per cent of the mineral rights, and that the Browns could not reform their own deed to reduce the mineral interest conveyed to their grantees, Kirk and Linch, from fifty per cent to twenty-five per cent.

■ In the present case, Abrams attempts to construe the deed between Johnson and Mountcastle. He was not a party to that conveyance. His grantor, Mountcastle, was and is in a better position than Abrams to know what was involved in the transaction. Mountcastle by his deed to Abrams recognizes the ten per cent interest of the Georges *and the ten per cent reservation to Johnson,* and so stated in the deed to Abrams. Abrams in buying knew that he was getting only eighty per cent of the mineral rights and was fully apprised of the exception in the deed of a full twenty per cent. Mountcastle stands in the position of Kirk and Linch in the Brown case. He is not here and he is not complaining. By his conveyance he recognized the Johnson interest.

In such a factual situation it is difficult to conceive how Abrams can claim conveyance to him of ninety per cent of the mineral rights.

■ In addition to the exceptions by Mountcastle, which express his understanding of what he had received from Johnson and what he was selling to Abrams, we have this rule of construction to interpret the Johnson-Mountcastle deed:

"A well-settled rule of construction of deeds is 'one which will give force and effect to all of the provisions and terms of the deed which the parties intended at the time of its execution, and if a deed can be construed and interpreted so as to make all of its provisions operative and effective, that construction must be adopted.' " *Percifield v. Rosa, et al.,* 122 Colo. 167, 220 P. (2d) 546.

■ The reservation of a ten per cent mineral interest by M. N. Johnson at the time of the execution of the deed was definitely set out. The deed can be construed so as to make this provision operative and no person

will lose any mineral interest which was intended to be reserved and no person will gain such an interest. To allow Abrams to set aside a reservation made twenty-five years before he took title with full knowledge of such reservation would be inequitable and unjust.

In the instant case, Abrams is not in position to complain as he has received everything set forth in the warranty deed to him.

The judgment is reversed and the cause remanded to the trial court with directions to vacate the decree heretofore entered and to enter a decree quieting title in the plaintiff in error, Gerald Dixon, of the ten per cent oil and mineral interest reserved by M. N. Johnson.

MR. JUSTICE KNAUSS and MR. JUSTICE DOYLE concur.