John D. O'BRIEN, Mario P. Borini and Farrow J. Smith, as the joint Personal Representatives of the Estate of G.B. Henderson, Deceased, Petitioners,

v.

VILLAGE LAND COMPANY, a Colorado corporation, Respondent.

No. 89SC241.

Supreme Court of Colorado, En Banc.

July 9, 1990.

Dietze, Davis and Porter, P.C., Peter C. Dietze, William F. Nagel, Boulder, for petitioners.

No appearance for respondent.

Justice QUINN delivered the Opinion of the Court.

We granted certiorari to review the decision of the court of appeals in *O'Brien v. Village Land Company*, 780 P.2d 1 (Colo.App.1988). The court of appeals, in construing an unambiguous deed which conveyed a fee simple interest in a sixty-acre parcel of land and reserved an undivid-

ed one-half interest in oil, gas, and other minerals, held that it was proper to go beyond the four corners of the deed and to consider a fractional mineral interest reserved by the grantor's predecessor in title so as to reduce the fractional mineral interest conveyed by the deed in question. We reject this analysis and hold that where, as here, a deed is unambiguous on its face, the nature and extent of the interests conveyed by the deed must be determined from the contents of the deed itself without regard to extrinsic evidence. Application of this principle to the deed in question leads us to conclude that the deed conveyed a fee simple interest in a sixty-acre parcel and an undivided one-half interest in oil, gas, and other minerals underlying the sixty-acre parcel. We accordingly reverse the judgment of the court of appeals and remand the case to that court with directions to reinstate the judgment of the district court.

### I.

On September 9, 1981, Village Land Company (Village Land) purchased from Albert Bloom, the personal representative of the Estate of Jennie Ogren, a 380-acre tract of land located in Boulder County, Colorado, for the sum of $850,000. A personal representative's deed containing a detailed description of the property was executed on September 9, 1981, and was duly recorded in the Boulder County Clerk and Recorder's office on the following day. The Ogren Estate–Village Land deed contained the following provision:

> RESERVING an undivided one-half interest in and to all oil, gas and other minerals (except sand, gravel and associated minerals) for a period ending 25 years after the date of this deed or at such time as any ongoing extraction or production of oil, gas or minerals occurring on the property on the 25th anniversary has ceased, whichever is later.

On the same day on which Village Land acquired title to the 380-acre tract of land from the Ogren Estate, Village Land conveyed out of the 380-acre tract a sixty-acre parcel by general warranty deed to G.B.

Henderson, who is now deceased, for the sum of $120,000. The granting clause of the Village Land–Henderson deed stated that Village Land was conveying the sixty acres together with "all and singular the hereditaments and appurtenances thereto belonging, or in any wise appertaining, ... and all the estate, right, title, interest, claim and demand whatsoever of [Village Land] ... in and to the above bargained premises." The deed also contained the following reservation:

> RESERVING an undivided one-half interest in and to all oil, gas and other minerals (except sand and gravel and associated minerals) for a period ending 25 years after the date of this deed or at such time as any ongoing extraction or production of oil, gas or minerals occurring on the property on the 25th anniversary has ceased, whichever is later.

The warranty clause of the Village Land–Henderson deed stated that Village Land was "well seized of the premises above conveyed ... in fee simple" with full power to convey, and further provided, as pertinent here, that the property was free of all encumbrances "EXCEPT easements and rights-of-way of record and all leases whatsoever of record and special use permits, restrictive covenants and any and all other items and agreements of record." The Village Land–Henderson deed was also recorded in the Boulder County Clerk and Recorder's Office on the following day a few minutes after the recording of the Ogren Estate–Village Land deed.

Sometime in 1982, after Village Land's conveyance to Henderson, Vessels Oil and Gas Company began oil and gas production on the sixty-acre tract of land deeded to Henderson. Based on the reservation clause in the Village Land–Henderson deed, Vessels Oil made royalty payments to Village Land. Henderson was not aware of these payments until $16,000 in royalties had been paid to Village Land, at which time Henderson, and later the personal representatives of his estate, directed several requests to Village Land to refund the royalties paid by Vessels Oil. Village Land refused such requests, claiming that it was the rightful owner of the mineral interests

and was entitled to the royalty payments from Vessels Oil.

On March 31, 1986, the personal representatives of the Henderson Estate filed suit against Village Land. Claiming that the reservation in the Village Land–Henderson deed was the result of a mutual mistake, the Henderson Estate requested that the Village Land–Henderson deed be reformed to make clear that Village Land conveyed to Henderson all of the sixty-acre parcel except one-half of the mineral interests reserved in the Ogren Estate–Village Land deed, and further requested that the $16,000 in royalties paid to Village Land be refunded to the Henderson Estate on the theory of unjust enrichment. Village Land in its answer denied that the Village Land–Henderson deed was the result of a mutual mistake and asserted that the deed was not intended to convey any mineral or royalty interest to Henderson.

The Henderson Estate filed a motion for partial summary judgment, and Village Land filed a cross motion for summary judgment. The district court conducted a hearing on the motions and granted summary judgment in favor of the Henderson Estate.[1] The court ruled that the Village Land–Henderson deed was unambiguous and conveyed to Henderson

the fee simple title to the surface of the real property described therein and together with all oil, gas and other minerals, except the reservation by Village Land Company's immediate predecessor in title (Albert Bloom as the Personal Representative of the Estate of Jennie Ogren, a/k/a Jennie T. Ogren) of 'an undivided one-half interest in and to all

oil, gas and other minerals (except sand and gravel and associated minerals) for a period ending 25 years after the date of this deed or at such time as any on-going extraction or production of oil, gas or minerals occurring on the property on the 25th anniversary has ceased, whichever is later.'

The effect of the district court's ruling was to grant the Henderson Estate a one-half interest in the minerals on the sixty-acre parcel described in the Village Land–Henderson deed, with the other one-half interest remaining in the Ogren Estate pursuant to the reservation in the Ogren Estate–Village Land deed. Subsequent to this ruling, the Henderson Estate filed a motion for summary judgment on its claim for unjust enrichment. The court granted the motion and entered judgment in favor of the Henderson Estate for $18,597.21, plus interest.

Village Land appealed to the court of appeals, which reversed the judgment. Although the court acknowledged that the Village Land–Henderson deed was unambiguous, the court relied on the technical distinction between an "exception" and a "reservation," as well as that part of the warranty clause "excepting . . . any and all other items and agreements of record," in resolving the appeal. Remarking that "a reservation, as here, can benefit only the grantor," the court of appeals then drew upon the terms of the Ogren Estate–Village Land deed in construing the Village Land–Henderson deed and reasoned as follows:

It is axiomatic that a court must construe a deed or other conveyance so as to

1. At the summary judgment hearing, the legal theories of the parties were substantially different from their assertions in the complaint and answer. Henderson's Estate claimed that the deed conveying the sixty-acre parcel to Henderson was unambiguous and conveyed all mineral interests in the land minus the one-half previously reserved by the Ogren Estate. Village Land, on the other hand, asserted that the deed was ambiguous and that, as a result, the court should consider extrinsic evidence for purposes of determining the intent of the parties, and that such extrinsic evidence would establish material issues of fact in dispute. The extrinsic evidence that Village Land requested the court to consider was the Ogren Estate–Village Land deed in which the Ogren Estate reserved one-half of the mineral rights. Because the Ogren Estate–Village Land deed was executed on the same day and almost simultaneously with the Village Land–Henderson deed, Village Land asserted that Henderson was aware of the interest reserved by the Ogren Estate and that the undivided one-half interest reserved by Village Land in the conveyance to Henderson was in addition to the one-half previously reserved by the Ogren Estate. Consequently, according to Village Land, Henderson received no interest in the minerals underlying the sixty-acre parcel.

give force and effect to all of its provisions and terms, so as to make all of its provisions operative.... The conveyance from Ogren [Estate] to Village [Land] is clear, and it left Village [Land] with an undivided one-half interest in the minerals in the entire tract, including the 60–acre parcel at issue here. The Ogren reservation of the other undivided one-half interest in the 380–acre tract is noted in the Village-to-Henderson deed in an exception clause including 'other items and agreements of record.'

We, therefore, conclude that the conveyance from Village [Land] to Henderson is not ambiguous, and that it reserved to Village [Land] an undivided one-half of its interest in the minerals in the 60–acre parcel, conveying the other undivided one-half of its interest in the minerals to Henderson. This conveyance had the effect of conveying to Henderson one-half of Village [Land's] one-half interest, or an undivided one-quarter interest in the minerals.

*Village Land,* 780 P.2d at 3 (citations omitted). We granted the Henderson Estate's petition for certiorari to consider whether the court of appeals erred in looking beyond the four corners of the unambiguous warranty deed to Henderson in order to determine the fractional mineral interests conveyed by that deed.

## II.

"It is a universally accepted principle of law that when a deed is unambiguous and unequivocal, the intention of the parties thereto must be determined from the deed itself, and extrinsic evidence to alter, vary, explain or change the deed by any such evidence is not permissible." *Brown v. Kirk,* 127 Colo. 453, 456, 257 P.2d 1045, 1046 (1953).[2] Whether an ambiguity exists

in a document is a question of law. *E.g., Pepcol Manufacturing Co. v. Denver Union Corp.,* 687 P.2d 1310, 1314 (Colo.1984). In the absence of any ambiguity, "[t]he intention of the parties is controlled entirely by the deed and its terms." *Brown,* 127 Colo. at 456, 257 P.2d at 1046. Although the court of appeals in its analysis acknowledged that a court must construe a deed so as to give effect to all of its provisions, it nonetheless went on to utilize the terms of the Ogren Estate–Village Land deed in construing the terms of the Village Land–Henderson deed notwithstanding the fact that the court simultaneously acknowledged that the terms of this latter deed were not ambiguous. 780 P.2d at 3. In so ruling, the court of appeals erroneously relied on extrinsic evidence in interpreting the terms of an admittedly unambiguous document.

It is well established that a conveyance of land by general description, without any reservation of a mineral interest, passes title to both the land and the underlying mineral deposits. 3 *American Law of Mining* ¶ 15.13, at 144 (1982). The Village Land–Henderson deed conveyed to Henderson the sixty-acre tract together with all "hereditaments and appurtenances thereto" and all "right, title, [and] interest" of Village Land in the premises, and expressly reserved only "an undivided one-half interest in and to all oil, gas and other minerals" in the sixty-acre parcel. The deed further provided that Village Land was seized in fee simple of the premises described in the deed and that Village Land had full power and authority to convey those premises free and clear of any encumbrances. The clear and unambiguous terms of the Village Land–Henderson deed demonstrate that Village Land was reserving from the grant one-half, and only one-

2. In determining whether a deed is ambiguous, a trial court may conditionally admit extrinsic evidence on that issue, but if it is ultimately determined that the document is unambiguous, the conditionally admitted evidence must be stricken. *Pepcol Mfg. Co. v. Denver Union Corp.,* 687 P.2d 1310, 1314 n. 3 (Colo.1984); 4 S. Williston, *A Treatise on the Law of Contracts,* § 601, at 311 (W. Jaeger ed. 1961). In this case, however, both the trial court and the court of ap-

peals determined that the Village Land–Henderson deed was unambiguous, and the only issue before us is whether under the circumstances of this case the court of appeals erred in considering the terms of the Ogren Estate–Village Land deed for the purpose of determining the nature and extent of the interests conveyed to Henderson by the Village Land–Henderson deed.

half, of the mineral interests in the sixty-acre parcel conveyed to Henderson, that Village Land was conveying to Henderson all other mineral interests owned by it and not expressly reserved in the deed, and that Village Land was warranting title to all mineral interests not expressly reserved. Because there is no ambiguity in the terms of the deed, as both the district court and the court of appeals expressly acknowledged, there was no basis in law for the court of appeals to consider extrinsic evidence—namely, the terms of the Ogren Estate–Village Land deed—in construing the nature and extent of the interests conveyed under the Village Land–Henderson deed.

### III.

In its ruling, the court of appeals placed significant weight on the following two factors: the fact that the Village Land–Henderson deed was cast in terms of a reservation rather than an exception; and the fact that the warranty clause in the Village Land–Henderson deed excepted "any and all other items and agreements of record." This latter factor, the court of appeals clearly implied, put Henderson on notice of the reservation clause in the Ogren Estate–Village Land deed and thereby limited the interest conveyed by the Village Land–Henderson deed to an undivided one-quarter interest in the minerals. We reject this analysis.

### A.

■ Although historically a distinction has been drawn between an exception, which refers to some part of the property not included in the conveyance and with which the grantor never parts, and a reservation, which has been interpreted as the creation in the grantor of a new right or interest in the premises conveyed, *see Brown*, 127 Colo. at 456–57, 257 P.2d at 1046–47; 2 C. Krendl, *Colorado Practice* ¶ 1721 (3d ed. 1983); II A. Casner, *American Law of Property* § 10.6, at 517 (1952), our case law recognizes that these terms are often used interchangeably without any intent to preserve the historical distinction

and that the historical distinction is without significance when the deed itself unambiguously manifests the intent of the parties. *See Corlett v. Cox*, 138 Colo. 325, 328–29, 333 P.2d 619, 621 (1958) (in order to give effect to grantor's intent, "exception may be construed as a reservation, and vice versa"); *Brown*, 127 Colo. at 457, 257 P.2d at 1047 ("It is obvious from the deed here in question that the verbs 'except' and 'reserve' as well as the noun 'reservation' were used interchangeably, synonymously, and without reference or regard to their technical, legal meaning."). In light of the unambiguous terms of the Village Land–Henderson deed, which conveyed a fee simple interest in the sixty-acre parcel and reserved only an undivided one-half interest in the minerals, the court of appeals' reliance on the historical distinction between an exception and a reservation was misplaced.

### B.

Similarly misplaced was the court of appeals' reliance on that part of the Village Land–Henderson warranty clause which excepted from the warranty "any and all other items and agreements of record." We initially note that when the Village Land–Henderson deed was executed on September 9, 1981, the Ogren Estate–Village Land deed had not been recorded and was not filed of record until the following day. More important to our analysis, however, is the fact that even if Henderson had actual knowledge of the one-half mineral interest reservation in the Ogren Estate–Village Land deed, such knowledge would not have placed Henderson on notice that Village Land was unable to convey the other one-half mineral interest not previously reserved by Village Land's predecessor in title. The actual interest conveyed by the plain terms of the Village Land–Henderson deed was within the power of the grantor to convey, and under these circumstances, any actual or constructive knowledge on the part of Henderson of the prior reservation in the Ogren Estate–Village Land deed did not serve to diminish the interest conveyed to him by the granting clause of the deed—namely, a fee sim-

ple title to the sixty-acre parcel and all mineral interests except the one-half undivided interest expressly reserved in the deed itself.

■ Moreover, the court of appeals' analysis fails to distinguish between a granting clause and a warranty clause. The purpose of a granting clause is "to define and designate the estate conveyed." *Kynerd v. Hulen*, 5 F.2d 160, 161, (5th Cir.), *cert. denied*, 269 U.S. 560, 46 S.Ct. 20, 70 L.Ed. 411 (1925). A covenant of general warranty, on the other hand, is a guarantee that the grantor is vested of an estate in fee simple with full power to convey, that the property is free of all encumbrances except as listed in the deed, and that the grantor will guarantee title and peaceful possession and will defend the grantee's title to the property. *See* § 38–30–113, 16A C.R.S. (1982); 2 *Colorado Practice* ¶ 1702; 6A R. Powell and R. Rohan, *Powell on the Law of Real Property* ¶ 900(2). Exceptions inserted into a covenant of warranty

are intended only to protect the grantor on the warranty and are not intended as a limitation on the nature of the interest conveyed by the granting clause. *See e.g., United States v. McKenzie County*, 187 F.Supp. 470 (D.N.D.1960), *aff'd sub nom. Murray v. United States*, 291 F.2d 161 (8th Cir.1961); *First Nat'l Bank of Denver v. Allard*, 182 Colo. 297, 513 P.2d 455 (1973); *Williams v. McCann*, 385 P.2d 788 (Okl. 1963). Because the face of the Village Land–Henderson deed purported to convey all mineral interests except the one-half expressly reserved by the terms of the deed, Village Land as grantor conveyed and warranted title to one-half of the mineral interests with respect to the sixty-acre parcel conveyed by the deed to Henderson. *See Peterson v. Simpson*, 286 Ark. 177, 690 S.W.2d 720 (1985); *Garraway v. Bryant*, 224 Miss. 459, 80 So.2d 59 (1955); *Kadrmas v. Sauvageau*, 188 N.W.2d 753 (N.D.1971); *Murphy v. Athans*, 265 P.2d 461 (Okl.1953).[3]

**3.** Several jurisdictions in construing deeds conveying fractional mineral interests with reservation clauses have reached a similar result by applying a rule of law established by the Texas Supreme Court in *Duhig v. Peavy–Moore Lumber Co.*, 135 Tex. 503, 144 S.W.2d 878 (1940). *See* 1 H. Williams and C. Myers, *Oil and Gas Law*, § 311, nn. 1–1.1 (1988). In *Duhig*, the subject property conveyed to Duhig had been previously conveyed by a deed containing a reservation of an undivided one-half interest in the minerals. Duhig later acquired the property and conveyed it to Moore Lumber Company by general warranty deed, reserving "an undivided one-half interest in and to all mineral rights" and warranting the title to the premises conveyed. Duhig and Moore Lumber Company later each claimed that they owned the fifty percent of the minerals not owned by Duhig's predecessor in title. The Texas Supreme Court applied an estoppel principle in holding that the clause reserving an undivided one-half interest in Duhig, the grantor, merely withheld the one-half interest previously reserved by Duhig's grantor. The court's analysis treated the granting clause and the reservation clause separately in time: first, the deed's granting clause operated to convey to Moore Lumber Company all the surface and Duhig's interest in the minerals, which resulted in Duhig owning nothing; second, the reservation operated to return to Duhig a one-half interest in the minerals, which resulted in Moore Lumber Company owning the surface and not the mineral rights. At this point, because both the granting and reservation claus-

es had been given effect, the deed was exhausted and Duhig was in breach of the warranty. In order to rectify the breach, the court, drawing on an analogy to the doctrine of promissory estoppel by deed against assertion of an after-acquired title, held that fifty percent of the mineral interests should be transferred from Duhig to Moore Lumber Company.

The complex analysis employed in *Duhig* has been criticized as contrived, especially because, as the opinion states, "[t]he result is that the grantor has breached his warranty, but that he has and holds in virtue of the deed containing the warranty the very interest, one-half of the minerals, required to remedy the breach." 144 S.W.2d at 880. One commentator has offered the following criticism of this analysis:

> When you think about this statement you can see that it does not make sense. The deed has been allowed to fully operate; as part of that operation, Duhig got (or kept, if you like) 50% of the minerals, but the warranty is breached. If the warranty warrants what the deed purports to convey, and the court has construed the deed to convey no mineral interest to the lumber company, how can there be a breach of warranty?
>
> The majority is saying that the deed itself, as properly construed by the court, conveyed no minerals to the lumber company, but because of the warranty in the deed, Mrs. Duhig owes the lumber company 50% of the minerals. This logic simply won't wash. If the majority had construed the deed correctly, how could there be a breach of warranty? In effect, the

## IV.

Our conclusion that the Village Land–Henderson deed conveyed to Henderson an undivided one-half mineral interest in the sixty-acre parcel is supported by this court's decision in *Brown v. Kirk*, 127 Colo. 453, 257 P.2d 1045, a 1953 case analytically indistinguishable from the instant controversy. In *Brown*, the Federal Land Bank conveyed a quarter section of land by deed and "excepted and reserved" an undivided one-fourth interest in the minerals. Subsequently, the Browns acquired the same property and conveyed it to Kirk and Linch by warranty deed that excepted and reserved an undivided one-half interest in the minerals and warranted the title to the property, "subject to the reservations above mentioned." The Browns later filed a lawsuit to establish their right to the minerals, claiming that Kirk and Linch only held an undivided one-quarter interest in the minerals. Kirk and Linch, on the other hand, claimed an undivided one-half interest in the minerals pursuant to the Brown–Kirk deed. The Federal Land Bank's outstanding one-quarter interest was not disputed. The trial court found that the Brown–Kirk deed unambiguously conveyed one-half of the mineral interest to Kirk and Linch, and reserved one-half of the mineral interest in the Browns, with the result that the Browns and the bank each held one-fourth of the mineral interest and Kirk and Linch held one-half of the mineral interest. In affirming the judgment, this court concluded that the Browns knew that the bank excepted and reserved a one-quarter interest in the land and that the Browns, as grantors, were protecting themselves on the warranty deed by excepting fifty percent of the oil, gas, and mineral rights while undertaking to warrant and defend the title to the remainder thereof. 127 Colo. at 457, 257 P.2d at 1047. Similarly here, Village Land, as is clearly evidenced on the face of the deed, reserved an undivided one-half interest in the oil, gas, and other minerals and conveyed title to the remaining one-half to Henderson, while concomitantly undertaking to warrant and defend the title to that one-half interest conveyed to Henderson.[4]

We accordingly reverse the judgment of the court of appeals and remand the case to

---

majority is saying that the deed does one thing and the warranty warrants another. A warranty guarantees only that which the words of the deed purport to convey. Therefore, the quantum which the words purport to convey must be determined without reference to the warranty.

W. Ellis, *Rethinking the Duhig Doctrine*, 28 Rocky Mtn.Min.L.Inst. 947, 952–53 (1982) (footnote omitted). We do not employ the *Duhig* analysis in this case and instead reach our result by giving effect to the unambiguous and unequivocal terms of the Village Land–Henderson deed.

4. This court in *Dixon v. Abrams*, 145 Colo. 86, 357 P.2d 917 (1960), distinguished *Brown* on its facts. In *Dixon*, the Georges conveyed land to Johnson by warranty deed, reserving a ten percent mineral interest, and Johnson then conveyed to Mountcastle, reserving a ten percent mineral interest but making no reference to the Georges' reservation. The ten percent mineral interest reserved by Johnson was acquired by Dixon at a tax sale. Mountcastle later conveyed the land by warranty deed to Abrams, and in the deed *expressly subjected the conveyance to the ten percent interest owned by Johnson and the ten percent interest owned by the Georges.*

Abrams brought an action to quiet title to a ninety percent mineral interest, claiming that the reservation in the Johnson–Mountcastle deed was merely a recognition of the prior reservation by the Georges and was not a separate and independent reservation by Johnson. In rejecting Abrams' claim, this court held that "Abrams in buying knew that he was getting only eighty percent of the mineral rights and was *fully apprised of the exception in the deed* of a full twenty percent" and that it would be inequitable and unjust "to allow Abrams to set aside a reservation made twenty-five years before he took title with full knowledge of such reservation." 145 Colo. at 90–91, 357 P.2d at 919. The facts of *Dixon* are clearly distinguishable from the instant case in that here the Village Land–Henderson deed referred only to the one-half mineral interest reserved by Village Land, the grantor, and not to the prior reservation in the Ogren Estate–Village Land deed. Thus, Henderson, as grantee, reasonably could rely on the plain terms of the Village Land–Henderson deed, which purported to convey to Henderson all the mineral interests owned by Village Land except the one-half interest expressly reserved in the deed. Under these circumstances *Brown*, not *Dixon*, provides the controlling precedent for resolving this case.

that court with directions to reinstate the judgment of the trial court.