The summaries of the Colorado Court of Appeals published opinions constitute no part of the opinion of the division but have been prepared by the division for the convenience of the reader. The summaries may not be cited or relied upon as they are not the official language of the division. Any discrepancy between the language in the summary and in the opinion should be resolved in favor of the language in the opinion.

SUMMARY
July 23, 2020

## 2020COA113

## No. 18CA1844, *Moeller v. Ferrari Energy, Inc.* — Real Property — Conveyances — Mineral Estates

Plaintiffs initiated this action seeking to quiet title in a mineral interest that was the subject of duplicative lease agreements. The dispute originates in a warranty deed conveying a parcel of land but reserving an undivided one-half interest in the mineral estate. The interpretative challenge arises from the fact that one-half of the estate had already been accounted for in a prior reservation. A division of the court of appeals concludes that in light of the prior reservation, the warranty deed is ambiguous because it is susceptible of two interpretations: (1) that the warranty deed conveyed to the grantees the half of the mineral estate that had not previously been reserved; or (2) that the warranty deed reserved one-half of the mineral estate to the grantors, in addition to the

previous reservation, leaving no portion of the mineral estate for the grantees.

J. Grove, specially concurring, would hold that the deed, by its plain language, unambiguously conveyed one-half of the mineral estate to the grantees.

COLORADO COURT OF APPEALS

---

Court of Appeals No. 18CA1844
Weld County District Court No. 17CV30252
Honorable Todd L. Taylor, Judge

---

Dana Moeller and Darrell Moeller,

Plaintiffs-Appellants and Cross-Appellees,

v.

Ferrari Energy, LLC, a Colorado limited liability company,

Defendant-Appellee and Cross-Appellant,

and

Susie Velasquez, as Public Trustee of Weld County,

Defendant.

---

JUDGMENT REVERSED AND CASE
REMANDED WITH DIRECTIONS

Division V
Opinion by JUDGE HARRIS
Román, J., concurs
Grove, J., specially concurs

Announced July 23, 2020

---

Witwer, Oldenburg, Barry & Groom, LLP, Kent A. Naughton, Greeley, Colorado, for Plaintiffs-Appellants and Cross-Appellees

Moye White LLP, Charles Greenhouse, Eric B. Liebman, Abigail L. Brown, Denver, Colorado, for Defendant-Appellee and Cross-Appellant Ferrari Energy, LLC

Bruce Barker, County Attorney, Greeley, Colorado, for Defendant-Appellee Susie Velasquez, in her official capacity as Public Trustee of Weld County

¶ 1    Plaintiffs, Dana and Darrell Moeller, and defendant, Ferrari Energy, LLC,[1] both assert that they are the owners of minerals located on property in Weld County, Colorado.  The dispute arises from the relevant deed's language reserving a "1/2 interest" in the minerals to the grantors.  That language would not ordinarily present an interpretive challenge, but a predecessor grantor had already reserved a one-half interest in the minerals, so the grantors who conveyed the property to the Moellers' predecessors-in-interest owned only a one-half interest to begin with.

¶ 2    The district court concluded that the warranty deed unambiguously reserved to the grantors, who are Ferrari's predecessors-in-interest, a one-half interest in the minerals.  And because the grantors only owned a one-half interest, there was no remaining interest to convey, and the Moellers ultimately received no interest in the minerals.  Accordingly, the district court quieted title in the mineral interest in Ferrari.

---

[1] Susie Velasquez, in her official capacity as Public Trustee of Weld County, entered an appearance in the court of appeals but did not file a brief.

¶ 3    On appeal, the Moellers contend that the district court misconstrued the warranty deed and therefore erred in entering judgment for Ferrari.

¶ 4    We conclude that the warranty deed is ambiguous. In our view, the language reserving to the grantors a one-half interest in the mineral estate is susceptible of two reasonable interpretations: (1) the grantors reserved a total one-half interest in the minerals and conveyed the other half to the Moellers' predecessors-in-interest; or (2) the grantors reserved a one-half interest in the minerals for themselves, in addition to the prior grantor's one-half interest, and thereby conveyed no interest in the minerals to the Moellers. These two interpretations remain equally plausible even after taking into account the limited extrinsic evidence of the parties' intent. We therefore resolve the ambiguity by applying the longstanding rule of construction that ambiguities in a deed are construed in favor of the grantee. *See Clevenger v. Cont'l Oil Co.,* 149 Colo. 417, 421, 369 P.2d 550, 552 (1962). Accordingly, we conclude that the warranty deed reserved a total of a one-half interest and granted a one-half interest to the Moellers.

¶ 5     We therefore reverse the district court's decree in quiet title and remand for entry of judgment in favor of the Moellers. In light of our disposition, we need not address the parties' other claims of error.

## I.     Background

### A.     The Relevant Conveyances and Leases

¶ 6     In 1954, Russell and Velma Burns conveyed to Ruth Todd the real property now owned by the Moellers, but expressly reserved "one-half of all oil, gas and minerals on and under said land" (the Burns reservation). Six years later, Todd conveyed the property to Glenn and Sally Wilson, subject only to the Burns reservation.

¶ 7     Then, in 1964 the Wilsons, who now owned the one-half mineral interest not reserved by the Burnses, sold the property to Pete and Mary Katzdorn. The warranty deed (1964 Deed) conveyed fee simple title to the real property "excepting and reserving to the Grantors herein an undivided 1/2 interest in and to all the oil, gas and minerals in, upon and under said land."

¶ 8     The property was eventually conveyed to the Moellers, but the operative reservation remained the one in the 1964 Deed.

¶ 9    In 2002, the Moellers entered into a mineral lease agreement with PDC Energy, Inc., and soon began receiving royalties. But in 2016, PDC learned that the Wilsons might own the mineral interest, so it entered into a duplicative mineral lease agreement with the Wilsons. The Wilsons later conveyed any interest they had in the minerals to Ferrari and assigned to Ferrari the right to collect any royalty payments owed to them by PDC.

## B.    Procedural History

¶ 10    The Moellers then filed this action, seeking to quiet title in the mineral interest. Ferrari asserted its own claim to the minerals and also sought royalty payments going back to 2002, from both the Moellers and PDC, under a theory of unjust enrichment.

¶ 11    The district court addressed ownership of the minerals on a motion for summary judgment. The court analyzed the conveyance in two parts — first determining the scope of the reservation, then determining the scope of the grant. In determining the scope of the reservation in the 1964 Deed, the court declined to consider extrinsic evidence of the Burns reservation. The court concluded that the language "excepting and reserving to the Grantors . . . an undivided 1/2 interest" unambiguously *reserved* to the Wilsons

their own one-half interest in the mineral estate, and thus extrinsic evidence was inadmissible to interpret the phrase. Nonetheless, the court then admitted the same extrinsic evidence to determine the interest *granted* to the Katzdorns. The court reasoned that because the Burnses had previously retained a one-half interest in the mineral estate, the Wilsons' reservation of their own one-half interest meant they conveyed no portion of the mineral estate to the Katzdorns. The court thus quieted title in the minerals, as a matter of law, in Ferrari, the Wilsons' successor-in-interest.

## II. The District Court's Decree in Quiet Title

¶ 12 The Moellers appeal the district court's denial of PDC's motion for summary judgment and the resulting decree in quiet title.[2] Specifically, the Moellers contend that the court erred in concluding that the 1964 Deed unambiguously reserved a one-half mineral interest to the Wilsons, conveying no portion of the mineral estate to the Katzdorns.

---

[2] Ferrari says that because PDC, not the Moellers, filed the motion for summary judgment, the Moellers may not challenge the district court's summary judgment ruling. But that ruling formed the basis of the court's decree in quiet title, which the Moellers may indisputably appeal.

A.    Standard of Review and Principles of Interpretation

¶ 13    We review de novo the interpretation of a deed, as well as the district court's determination whether the deed is ambiguous. *Owens v. Tergeson*, 2015 COA 164, ¶ 17.

¶ 14    Deeds are usually construed in accordance with the general rules of construction of written instruments. *Id.* at ¶ 15. In accordance with those rules, if a deed is unambiguous, its terms must be enforced as written. *Id.* But if an ambiguity exists in the deed's reservation of mineral rights, the construction "must favor the grantee." *Id.*; *see also Notch Mountain Corp. v. Elliott*, 898 P.2d 550, 557 (Colo. 1995) ("[A]ny ambiguities in a reservation are construed against the grantor."); *Clevenger*, 149 Colo. at 421, 369 P.2d at 552.

¶ 15    In determining whether an ambiguity exists in the first instance, we examine the instrument's language, giving the words employed their plain and generally accepted meaning. *Meyerstein v. City of Aspen*, 282 P.3d 456, 468 (Colo. App. 2011). When the instrument is a deed, however, we interpret the language "*in light of all the circumstances*" surrounding the conveyance. *Lazy Dog Ranch v. Telluray Ranch Corp.*, 965 P.2d 1229, 1235-36 (Colo. 1998)

(quoting Restatement (Third) of Prop.: Servitudes § 4.1 cmt. c. (Am. Law Inst. 1994)). In other words, extrinsic evidence may be used to determine, as a threshold matter, whether the deed is ambiguous. *Id.* at 1236. If in light of extrinsic evidence the deed is unambiguous, the extrinsic evidence should then be disregarded as the court interprets the plain meaning of the deed. *Id.* If, however, extrinsic evidence reveals the deed is ambiguous, then the court may continue to use extrinsic evidence in discerning the parties' intent. *Id.* When an ambiguity persists despite the consideration of extrinsic evidence, the ambiguity is resolved in favor of the grantee. *Bell Petroleum Co. v. Cross V. Cattle Co.*, 492 P.2d 80, 81 (Colo. App. 1971) (not published pursuant to C.A.R. 35(f)).

## B. Analysis

¶ 16    A conveyance of real property, which is generally defined and designated in the deed's granting clause, passes all title to the land and the underlying mineral deposits, except those interests explicitly held back. *O'Brien v. Vill. Land Co.*, 794 P.2d 246, 249-51 (Colo. 1990).

¶ 17    The 1964 Deed conveyed the real property, together with its appurtenances, "excepting and reserving to the Grantors herein an

7

undivided 1/2 interest in and to all the oil, gas and minerals in, upon and under said land," but without any reference to the Burns reservation. The question is whether the 1964 Deed reserved a total of a one-half interest in the minerals and thereby conveyed the other one-half interest to the Katzdorns (in which case the Wilsons retained no mineral interest), or whether it reserved to the Wilsons a one-half interest along with the Burns reservation (in which case the Moellers received no mineral interest).

¶ 18     The district court acknowledged that the extrinsic evidence of prior conveyances created an ambiguity, but it declined to consider that evidence in construing the reservation clause, having already determined that the language was unambiguous as to what the Wilsons retained. We decline to adopt that approach. Because "circumstances surrounding the grant may be relevant to interpreting the language of the grant," we may consider the extrinsic evidence of the Burns reservation in determining whether the 1964 Deed is ambiguous in the first instance. *Lazy Dog*, 965 P.2d at 1236-37.

¶ 19     Terms in a deed are ambiguous when they are susceptible of more than one reasonable interpretation. *Owens*, ¶ 16; *see also*

*Bledsoe v. Hill*, 747 P.2d 10, 12 (Colo. App. 1987) ("An ambiguity is an uncertainty of the meaning of language used in a written instrument."). We conclude that in light of the Burns reservation, which left the Wilsons with only a one-half interest in the minerals, the language of the 1964 Deed is ambiguous.

¶ 20    On the one hand, 1964 Deed could reasonably be interpreted to reserve a total of a one-half interest in the minerals, as the Moellers contend.

¶ 21    This interpretation is consistent with supreme court precedent concerning similar patterns of conveyances. In *Brown v. Kirk*, a bank conveyed property to the plaintiffs through a deed that "reserv[ed] unto the party of the first part, its successors and assigns, an undivided one-fourth of all oil, gas, and other minerals." 127 Colo. 453, 454, 257 P.2d 1045, 1045 (1953). The plaintiffs then conveyed the property to the grantees, "excep[t] one half of all oil, gas and mineral rights which parties of the first part reserve." *Id.* (alteration in original). The supreme court concluded that the plaintiffs' reservation clause — "one half of all oil, gas and mineral rights" — referred to one-half of the entire mineral estate, including the bank's prior one-quarter reservation. *See id.* at 456-57, 257

9

P.2d at 1046-47. Therefore, the grantees received a one-half mineral interest, leaving the plaintiffs with only the remaining quarter-interest. *Id.*

¶ 22 The supreme court reached a similar conclusion when it interpreted the deed language at issue in *O'Brien v. Village Land Co.* In that case, the Ogren Estate conveyed to Village Land a piece of property, "RESERVING an undivided one-half interest in and to all oil, gas and other minerals." *O'Brien*, 794 P.2d at 247. Through a deed filed shortly thereafter on the same day, Village Land conveyed the property to Henderson, also "RESERVING an undivided one-half interest in and to all oil, gas and other minerals." *Id.* Finding the disputed conveyance analytically identical to the one at issue in *Brown*, the supreme court held that the Village Land-Henderson deed unambiguously reserved in total a one-half mineral interest, and thus the deed conveyed the remaining one-half interest to Henderson. *Id.* at 249-50, 252.

¶ 23 This interpretation also comports with the principle that a deed conveys all interests associated with real property except those explicitly reserved. 3 Am. Jur. 2d Deeds § 274, Westlaw (database

updated May 2020); *see also* 3 American Law of Mining § 82.01 (2d ed. 2020).

¶ 24    But in our view, neither that interpretive principle nor the precedent established by *Brown* and *O'Brien* compels a conclusion that the 1964 Deed is unambiguous.  Rather, the 1964 Deed could, on the other hand, reasonably be interpreted to reserve a one-half interest in the minerals to the Wilsons, in addition to the one-half interest reserved by the Burnses.

¶ 25    That is true because we are bound, by equally well-settled principles of construction, to give effect to each word in the deed. *See O'Brien*, 794 P.2d at 249 ("[A] court must construe a deed so as to give effect to all of its provisions[.]").  The specific reservation "to the Grantors" suggests that the Wilsons intended to retain their own one-half interest, independent of the prior reservation.  After all, the Burnses' one-half interest could not be reserved to the Wilsons.  To read the 1964 Deed as reserving a total of a one-half interest in the minerals would mean that the Wilsons reserved nothing to themselves, rendering the phrase "to the Grantors" meaningless.  We avoid an interpretation of an agreement that

would nullify any of its terms or provisions. *See Fed. Deposit Ins. Corp. v. Fisher*, 2013 CO 5, ¶ 12.

¶ 26 Given these two reasonable interpretations, the deed is ambiguous. *Bledsoe*, 747 P.2d at 12.

¶ 27 Neither party has pointed us to any extrinsic evidence of the parties' intent, other than the Burns reservation — the same evidence that gives rise to the ambiguity in the first place. In the district court, Ferrari produced evidence that the Wilsons had entered into lease agreements for the minerals in 1983 and 1986; it argued that the Wilsons' act of executing leases, and the failure of the Moellers' predecessors-in-interest to do the same, demonstrated that the parties to the 1964 Deed believed that the Wilsons had reserved for themselves an interest in the minerals.

¶ 28 True, courts may look to the subsequent conduct of parties to a deed as an indication of their intent. 23 Am. Jur. 2d Deeds § 265, Westlaw (database updated May 2020); *see also Hall v. Nash*, 81 P. 249, 251 (Colo. 1905); *Town of Manitou v. Int'l Tr. Co.*, 30 Colo. 467, 475-79, 70 P. 757, 760-61 (1902). But here, both the Wilsons and the Moellers entered into lease agreements at different times, apparently with no objection from the other (or the other's

predecessors-in-interest), and so the evidence suggests only that both believed themselves to be the owners of the minerals, presumably in reliance on the language of the 1964 Deed. In other words, this extrinsic evidence does not help to resolve the ambiguity. *See McCormick v. Union Pac. Res. Co.*, 14 P.3d 346, 353 (Colo. 2000) (cautioning, in a discussion of whether a reservation for "all minerals" included oil and gas, that decades-old extrinsic evidence does not always shed "real light on the parties' individual intentions"). We therefore default to the rule that an ambiguous deed is construed against the grantor. *Bell Petroleum*, 492 P.2d at 81; *see also Notch Mountain*, 898 P.2d at 557; *Owens*, ¶ 15.

¶ 29 Accordingly, we conclude that the district court erred in quieting title in the mineral estate in Ferrari. *See Bledsoe*, 747 P.2d at 12. The judgment is reversed, and the case is remanded with directions for the court to enter judgment in favor of the Moellers on their quiet title claim.

### III. The Parties' Other Claims of Error

¶ 30 In light of our disposition, we decline to address either the Moellers' additional argument that the court erred in precluding its adverse possession defense, or Ferrari's argument on cross-appeal

that the court erred in denying its unjust enrichment claim against the Moellers.

## IV. Conclusion

¶ 31    The decree in quiet title is reversed and the case is remanded for further proceedings consistent with this opinion.

JUDGE ROMÁN concurs.

JUDGE GROVE specially concurs.

JUDGE GROVE, specially concurring.

¶ 32     I agree with the majority's conclusion that any ambiguity in the 1964 Deed should be construed in favor of the Moellers, as successors-in-interest to the original grantees. But because, in my view, the 1964 Deed unambiguously conveyed one-half of the mineral estate to the grantees, I would reverse the district court's judgment on that ground alone.

¶ 33     In *O'Brien v. Village Land Co.*, 794 P.2d 246 (Colo. 1990), and *Brown v. Kirk*, 127 Colo. 453, 456, 257 P.2d 1045, 1046 (1953), the supreme court construed deeds that, like this one, conveyed land by general description while also reserving one-half of the minerals. Although the grantors in both cases owned only one-half of the mineral estates, they both argued that the reservation in the deeds applied to the halves that they owned — meaning that they would keep those minerals and transfer only the surface estates to the respective grantees.[1] The supreme court disagreed in both cases,

---

[1] In both cases, as in this one, the dispute only extended to the fraction of the minerals that the grantor owned at the time of the conveyance. Ownership of minerals previously reserved by others in the chain of title was unaffected by any subsequent disagreement over the remainder of the subsurface estate.

15

holding in *O'Brien* that where "the face of the . . . deed purported to convey all mineral interests except the one-half expressly reserved by the terms of the deed, [the] grantor conveyed and warranted title to one-half of the mineral interests" in the entire parcel. 794 P.2d at 251.

¶ 34    As a general rule, "a conveyance of land by general description, without any reservation of a mineral interest, passes title to both the land and the underlying mineral deposits." *Id.* at 249. Mineral interests may of course be excluded from a conveyance, but interpretive questions can arise in cases where a deed's grantor owns less than he ostensibly conveys. Colorado is one of a number of states that resolves any such questions by looking exclusively to the four corners of the deed and giving dispositive weight to the expectations that the grantee would have had based on the language of the deed alone.

¶ 35    The Texas Supreme Court considered the interpretive difficulties created by fractional conveyances from partial owners of the mineral estate in *Duhig v. Peavy-Moore Lumber Co.*, 144 S.W.2d 878, 880-81 (Tex. 1940). Its influential opinion established the "*Duhig* rule," which relies on principles of estoppel by deed to

prevent a grantor who has conveyed property by warranty deed from disputing the title that he has warranted.

> The effect of *Duhig* is that a grantor cannot grant and reserve the same mineral interest, and if a grantor does not own a large enough mineral interest to satisfy both the grant and the reservation, the grant must be satisfied first because the obligation incurred by the grant is superior to the reservation.

*Acoma Oil Corp. v. Wilson,* 471 N.W.2d 476, 480 (N.D. 1991).

¶ 36    The Colorado Supreme Court has declined to adopt *Duhig*'s estoppel-by-deed theory, noting that it "has been criticized as contrived." *O'Brien,* 794 P.2d at 251 n.3 ("We do not employ the *Duhig* analysis in this case and instead reach our result by giving effect to the unambiguous and unequivocal terms of the . . . deed."). Yet, on similar facts, *O'Brien* and *Brown* reached the same result as *Duhig* by conducting a simple one-step analysis that looked to the four corners of the deed alone to determine the scope of the conveyance. That approach was consistent with the author judge's preferred reasoning[2] in *Duhig,* which concluded that "the intention

---

[2] *Duhig v. Peavy-Moore Lumber Co.,* 144 S.W.2d 878 (Tex. 1940), was unusual in that the author judge essentially specially concurred by explaining his own distinct reasons for affirming the

17

of the parties to the deed was to invest the grantee with title to the surface and a one-half interest in the minerals," while withdrawing via the reservation clause the half that the grantor did not own. 144 S.W.2d at 879; *see also* Patrick H. Martin & Bruce D. Kramer, *Williams and Meyers, Oil and Gas Law* § 311 (2014). The reservations in all three cases — *O'Brien, Brown*, and *Duhig* — did not apply to the half that the grantor *did* own because otherwise the grantee would not receive the partial undivided interest in mineral estate that the deed purported to convey. *See Appling v. Fed. Land Bank of Wichita*, 816 P.2d 297, 301 (Colo. App. 1991).

¶ 37    Here, the district court found significant the fact that the 1964 Deed's reservation was "to the grantors herein" — language it determined "explicitly reserve[d] one-half of the mineral estate in the [grantors]." This reservation, it noted, contrasted with previous cases that reserved minerals without specifying who would own them after the sale was complete. *See O'Brien*, 794 P.2d at 247 (conveying real estate by general description while "RESERVING an undivided one-half interest in and to all oil, gas and other

trial court's judgment before revealing that the court had adopted the estoppel-by-deed approach.

minerals . . ."); *Brown,* 127 Colo. at 454, 257 P.2d at 1045 (conveying real estate by general description "except one half of all oil, gas and mineral rights which *party* of the first part reserves"). As the district court viewed it, the less specific language in these reservations allowed the *O'Brien* and *Brown* courts to conclude that the grantors "conveyed one-half of the mineral estate to the grantees without doing violence to the plain language in the deeds." But at the same time, the district court found that the more specific reservation in the 1964 Deed — "to the grantors herein" — precluded a similar result in this case.[3]

¶ 38　　In my view, the district court erred by allowing what it concluded was the *grantors' intent* to override the *grantees' expectation* based on the plain language of the deed. Based on that plain language, the grantees would have reasonably concluded that

---

[3] It is worth noting that the attempted reservation in *Duhig* included language every bit as specific as the 1964 Deed: "But it is expressly agreed and stipulated that the grantor herein retains an undivided one-half interest in and to all mineral rights or minerals of whatever description in the land." *Duhig,* 144 S.W.2d at 879. This reservation, the author judge would have held, did "not clearly and plainly disclose the intention of the parties that there be reserved to the grantor Duhig an undivided one-half interest in the minerals in addition to that previously reserved[.]" *Id.*

they were acquiring everything that the deed did not specifically reserve — including one-half of the mineral estate. The 1964 Deed, after all, conveyed the property by general description (reserving one-half of the minerals), and its habendum clause not only represented that the grantors were "well seized of the premises above conveyed," but also that those premises were "free and clear from all former and other grants, bargains, sales, liens, taxes, assessments and incumbrances of whatever kind or nature soever, except taxes for the year 1964." *See Owens v. Tergeson*, 2015 COA 164 (construing deed as a whole, including both granting and habendum clause, to determine grantor's intent). Based on these representations, and without going beyond the four corners of the deed to evaluate the mineral estate's chain of title, the grantees could only have concluded that one-half of the mineral estate was being reserved and the other one-half transferred to them. *See O'Brien*, 794 P.2d at 251.

¶ 39    Nor does the deed's reservation of half the mineral estate "to the grantors" render the deed ambiguous. "[T]he fact that the parties have different opinions about the interpretation of the deed does not of itself create an ambiguity." *Hudgeons v. Tenneco Oil*

*Co.*, 796 P.2d 21, 22 (Colo. App. 1990). And because the grantor assumes the risk of title failure, "[i]f both the grant and the reservation cannot be given effect . . . the grant must prevail." *Gilstrap v. June Eisele Warren Tr.*, 106 P.3d 858, 867 (Wyo. 2005); *see also Harlingen Irrigation Dist. Cameron Cty. No. 1 v. Caprock Commc'ns Corp.*, 49 S.W.3d 520, 533 (Tex. App. 2001) ("When both the granting clause and reservation clause cannot be given effect, the granting clause prevails and the reservation clause fails.").

¶ 40 In short, I would, consistent with *O'Brien* and *Brown*, hold that, whatever the grantors may have been attempting to do by adding a reservation clause to the 1964 Deed, they could not reserve any more of the mineral estate than what they already owned. Thus, the 1964 Deed unambiguously conveyed one-half of the mineral estate to the grantees, the Moellers' successors-in-interest, and left the grantors with nothing. Accordingly, while I concur with the majority's holding, I would reverse the judgment of the district court based on the plain language of the 1964 Deed alone.

21